818 So.2d 206 (2002)
Robert T. WEINMANN and Cindy H. Weinmann
v.
Troy DUHON, et al.
No. 2001-CA-1267.
Court of Appeal of Louisiana, Fifth Circuit.
March 26, 2002.
Rehearing Denied June 28, 2002.
*207 Brian C. Bossier, Kurt S. Blankenship, Mickal P. Adler, Guice A. Giambrone, Erin H. Boyd, Metairie, LA, for Plaintiff-Appellant.
Jack M. Capella, Metairie, LA, for Plaintiffs-Appellants.
William W. Hall, St. Metairie, LA, Edwin Stoutz, Jr., New Orleans, LA, for Defendants-Appellees.
David R.M. Williams, Metairie, LA, In Proper Person.
(Panel composed of Judges EDWARD A. DUFRESNE, Jr., JAMES L. CANNELLA and SUSAN M. CHEHARDY).
DUFRESNE, Chief Judge.
This is an appeal by Robert T. Weinmann and his wife Cindy from a judgment dismissing their suit for dissolution of a limited liability company of which they are 40% owners. Because we find that the trial judge fell into legal error, we vacate the judgment in its entirety and remand the matter to the district court for further proceedings, including according the litigants an opportunity to seek further judicial intervention pursuant to La. R.S. 12:1336 if they so desire.
The basic facts underlying this litigation are not disputed. On June 19, 1997, Regency Motors of Metairie, L.L.C. was organized. The original members were Robert Weinmann, with an interest of 40%, Michael Seago with an interest of 35%, and Troy Duhon with an interest of 25%. The initial resolutions of the company authorized Duhon to purchase in its name Interstate Ford, Inc., an automobile dealership, which was accomplished in due course. Duhon, the person with expertise in operating a dealership became the Dealer Operator of the company.
During the next several months the company operated under several interim agreements among the members. Then, on February 10, 1998, a document entitled "Operating Agreement" for the company was adopted. That document recites that the ownership interests in the company were now to include two new members, i.e. David Williams who acquired a 5% interest from Seago, and Allen Krake who acquired a 10% interest from Seago. That document was signed by Weinmann, Seago, Krake and Williams, but not by Duhon. A side agreement relating to certain voting *208 rights was also signed on the same day by the above four parties.
The sections of the Operating Agreement pertinent here are as follows:
1.4(a) VOTING. Decisions relating to the Company, other than those (i) in the ordinary course of the day-to-day operations of the business of the Company and (ii) otherwise specified herein, shall, except where otherwise provided on a specific issue, be made by a vote of sixty (60%) percent of interest held by the Members.... However, as provided in La. R.S. 12:1314(5) and 12:1318C, no Member's vote shall be counted on any vote to authorize a contract or transaction in which the Member has a financial personal interest.
1.4(d) ALIENATION OR ENCUMBRANCE OF INTERESTS.... Notwithstanding any other provision in this Agreement, any Member may assign, convey, sell or donate all or part of his or her membership interest, either directly or in trust, to a family member, who is either related by blood or marriage, and said family member will automatically become a Member without necessity of approval by the other members.
4.1 TERMINATION OF A MEMBER'S INTEREST. A Member's membership in the Company shall terminate upon any of the following occurrences:
(b) [E]xpulsion of a member by an unanimous vote of the other Members for "just cause." ...
5.3 MEMBER'S RESPONSIBILITIES.
(e) All Members, except Duhon, will have the exclusive responsibility and authority to hire and fire at will the Dealer Operator, General Manager, Comptroller and outside accountants and lawyers, in addition to other responsibilities that may be assigned by the Members of the Company. Such decisions to hire and fire shall be by a majority vote by interest of those uninterested Members (which excludes Duhon), except the decision to fire or terminate the Dealer Operator and General Manager and Comptroller is specifically delegated by the Members to any Member holding at least twenty (20%) percent in interest, with said Member having the authority on behalf of the Company to fire or terminate at will the Dealer Operator and General Manager and Comptroller as long as at least one other Member holding at least five (5%) percent in interest concurs with such termination.
6.1 MANAGEMENT BY MEMBERS
The Company will be managed by its Members.... [N]o Member-Manager can be removed as a Manager except by unanimous vote of the other Members for "just cause."
The side agreement, signed contemporaneously with the Operating Agreement, provided pertinently as follows:
NOW, THEREFORE, that for and as an inducement and as additional consideration for Seago selling ten (10%) percent of his interest to Krake and five (5%) percent of his interest to Williams and Seago and Weinmann to vote to admit Krake and Williams as Members of the Company, Krake and Williams agree that as long as Krake and Williams are Members of the Company:
1. Neither Krake nor Williams will vote their respective interest to remove Seago and/or Weinmann as either a Member or as a Member-Manager of the Company....
The evidence shows that the members of the company were at odds over its management from the very beginning of their business relationship. Over time Weinmann *209 came to feel that he was being ignored in the operation of the business, while the other members began to view Weinmann's activities as improper interference in the prudent management of the dealership.
Matters came to a head in mid 1999 over actions taken by Krake, who by then had become General Manager. On December 22, 1998, Weinmann had assigned a 10% interest in the company to his wife Cindy. Pursuant to Section 1.4(d) of the Operating Agreement, Cindy thus automatically became a member/manager of the company. On June 25, 1999, the Weinmanns notified Krake that they were terminating him as General Manager pursuant to Section 5.3(e) of the Operating Agreement, which authorized such action by any Member holding at least 20% interest with the concurrence of another Member holding at least a 5% interest. On June 30, 1999, the Weinmanns filed the present action for judicial dissolution of the company, and alternatively for a declaratory judgment clarifying the rights of the parties under their various agreements.
In response to this suit, on July 12, 1999, Duhon, Seago, Krake and Williams notified the Weinmanns that they had expelled them from the company as a Members and Member Managers.
After an extensive bench trial, the trial judge rendered a judgment which held the following:
1. The Operating Agreement was valid as to all the members except Duhon who had not signed it. However, Sections 4.1(b) and 6.1 (expulsion of members and member-managers by unanimous vote), and Section 5.3(e) (termination of General Manager by member with 20% interest with concurrence of member with 5% interest) were declared void as against public policy.
2. Cindy Weinmann was a valid member of the company by operation of Section 1.4(d) of the Operating Agreement.
3. The expulsion of Robert Weinmann was valid, but the expulsion of Cindy Weinmann was invalid.
4. The Weinmanns did not have the authority to terminate Krake.
5. The buy-out of Duhon by Seago was valid.
6. Judicial dissolution was denied.
The trial judge also stated in his reasons for judgment that the side agreement signed contemporaneously with the Operating Agreement was also invalid as against public policy.
The Weinmanns now appeal urging essentially that dissolution was the proper remedy. The other parties have answered the appeal asserting that Cindy Weinmann was improperly held to be a member and alternatively, that if she were a member, then her expulsion should have been upheld.
As a preliminary observation, we note that the parties here have expressed unequivocally that they do not wish to continue in business together. The Weinmanns for their part have filed suit to have the company dissolved, and Seago, Duhon, Williams and Krake have taken action to have the Weinmanns expelled from the business. The real issue here is thus on what legal terms should the present association of the parties be ended.
Louisiana's Limited Liability Company Law, La. R.S. 12:1335 states:
On application by or for a member, any court of competent jurisdiction may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement.
*210 The Operating Agreement does not provide any alternative terms for dissolution of the company so the above statute is controlling here. That being so, the inquiry for the trial court as well as this court is whether the business can be continued in conformity with the Operating Agreement. It is apparent that the trial judge came to the conclusion that it could not if the provisions of that agreement were to be given force. He pointed out that under Section 5.3(e) the Weinmanns could fire Krake, while under Section 1.4(a) the remaining members could simply re-hire him. He noted that under Section 1.4(d) any member could assign an interest in the company to a spouse and thus become immune from expulsion by unanimous vote of the other members as provided in Section 4.1(b). He also noted that the side agreement in which Krake and Williams agreed not to vote to expel either Seago or Weinmann also rendered these latter members immune from expulsion. He therefore struck from the agreement those provisions which rendered further operation of the company impossible. While we agree that the company can not continue under the Operating Agreement and side agreement, in this court's opinion it was legal error for the trial judge in effect to rewrite those agreements.
Article 1971 of the Louisiana Civil Code states:
Parties are free to contract for any object that is lawful, possible, and determined or determinable.
In the present matter there is nothing unlawful in Seago and Weinmann admitting Williams and Krake as members of the company only on condition that they not vote to expel these original members. Neither is it unlawful to provide that transfer of interests to a spouse automatically conveys membership in the company, again making that party immune from expulsion. While the situation involving the hiring and firing of the general manager could, and here probably has, led to an impasse, that fact alone does not render the contractual provisions unlawful.
What has occurred here is simply that the parties have different ideas about how their business should be conducted, and under their contractual arrangements they have reached a point where the business can not go forward pursuant to those arrangements. This situation is precisely what La. R.S. 12:1335 governs when it states that dissolution is proper "whenever it is not reasonably practicable to carry on the business in conformity with the articles of organization or the operating agreement." The trial judge thus erred when he dismissed the Weinmanns' petition to dissolve the company.
While the defendants assert that the dealership is viable and should not be destroyed by dissolution, that will not be the effect of terminating the company. The dealership is simply an asset owned by the company and that asset can be sold or otherwise transferred to different ownership upon dissolution of the limited liability company at issue here.
We finally note that La. R.S. 13:1336 B permits a court to wind up the affairs of a limited liability company upon application of any member.
For the above reasons we hold that the trial judge erred legally in setting aside various provisions of the agreements between the parties, and in not ordering its dissolution. We therefore vacate his judgment in its entirety and remand the matter to the district court for further proceedings, including entertaining any applications which might be filed by members of the company pursuant to La. R.S. 13:1336 B. All other matters in this case are thus rendered moot and need not be addressed further.
*211 JUDGMENT VACATED; REMANDED WITH INSTRUCTIONS.