#24600-rev & rem-JKK

**2008 SD 76**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

LORRAINE E. KIRKSEY, f/k/a
Lorraine E. Bach, and
LUCILLE E. RUBY,                                Plaintiffs and Appellants,

     v.

DOROTHY E. GROHMANN and
EILEEN C. RANDELL,                              Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
BUTTE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JOHN W. BASTIAN
Judge

* * * *

DWIGHT A. GUBBRUD of
Bennett, Main & Gubbrud, P.C.           Attorneys for plaintiffs
Belle Fourche, South Dakota             and appellants.

RONDA MILLER                            Attorney for defendant
Belle Fourche, South Dakota             and appellees.

* * * *

ARGUED ON JANUARY 9, 2008

OPINION FILED **07/30/08**

#24600

KONENKAMP, Justice

[¶1.] Four sisters inherited equal ownership in their family's land. They formed a limited liability company, conveying their property interests to the company in exchange for equal ownership in the LLC. One sister lives on the land and manages the LLC, and another sister leases the land for livestock grazing. Two other sisters live a great distance from the land. These sisters, who once agreed, are now divided. They speak only through their lawyers. Two sought to terminate the lease and dissolve the LLC; the other two opposed it. A majority vote is required, but the sisters are deadlocked. Judicial dissolution was sought and the circuit court granted summary judgment against it. On appeal, we conclude that it is not reasonably practicable for the company to continue and the economic purpose of the LLC is being unreasonably frustrated. We reverse and remand for an order of judicial dissolution.

## Background

[¶2.] On July 10, 2001, Grace Kirksey died. She had four daughters: Lucille Ruby, Lorraine Kirksey, Dorothy Grohmann, and Eileen Randell. Grace left her four daughters equal ownership interest in 2,769 acres of land in Butte County, South Dakota, and 401 acres in Crook County, Wyoming. These tracts composing the Kirksey land have been in the family for over 100 years. Grohmann lives on and manages this land, and Randell lives in Rapid City, South Dakota. Kirksey lives in California, and Ruby lives in Colorado.

[¶3.] On October 7, 2002, the four daughters formed a limited liability company, Kirksey Family Ranch, LLC, to hold title to the land. Each sister

conveyed her one-quarter interest in the property to the LLC in exchange for a 25% ownership in the company. Grohmann would serve as the manager. They formed the LLC (1) to avoid paying certain estate taxes by employing a special use valuation, (2) to keep the land in the family, and (3) to keep ownership interest in the real property with the sisters and not their spouses.

[¶4.] At the time of their mother's death, the land was valued at $550,000. With the special use valuation, it was reported to be valued at $215,000. To obtain the benefit of this valuation certain family members were required, among other things, to retain ownership in the land for ten years, and it was to be used for agricultural purposes. The eldest sister, Grohmann, had lived on the Kirksey land as a hired hand before their mother's death. Grohmann, Kirksey, and Randell each owned grazing livestock on the land. To continue the agricultural operation, the sisters decided that the LLC would lease the land to Grohmann, Kirksey, and Randell.

[¶5.] A lease agreement was executed in October 2002, effective September 1, 2002. It provided for an initial term of five years, to be automatically renewed for another year unless either party gave written notice of intent to terminate within ninety days before the termination of the lease. The annual rental rate was set at $14,263.20. The LLC, as the landlord, was responsible for all the real estate taxes and insurance.

[¶6.] Not long after the formation of the LLC, relations deteriorated. According to Kirksey, Grohmann and Randell "failed or refused to share information" with her on the operation of the ranch, on which she owned livestock

as a tenant to the lease. She claimed that she wrote Grohmann "dozens of pages of letters" to resolve disagreements and requested information about livestock and other issues. She insisted that Grohmann did not provide the requested information and, if she did, it was either inaccurate or unreliable. Also, according to Kirksey, Grohmann and Randell subleased 401 acres of the land without notice to the LLC, as required by the lease agreement.

[¶7.] Grohmann, on the other hand, said that she always gave Kirksey necessary information. She further contended that the LLC was given notice of the sublease because the members of the LLC, the sisters, were aware of the sublease arrangement when Grohmann initially divided up the sublease payments equally and attempted to share them with all the LLC members. Grohmann said that Kirksey accepted the payment, but Ruby did not as she was not a tenant to the lease.

[¶8.] Because of her continued frustrations with Grohmann and Randell, Kirksey sold them her interest in the livestock in 2003. Grohmann and Randell were then the only tenants on the lease agreement. This, however, did not end the contentious relationship between the sisters. Kirksey and Ruby hired a real estate agent to value the Kirksey land. It was estimated to be worth in excess of $3.2 million. Kirksey and Ruby then sought to terminate the lease agreement, dissolve the LLC, and partition the land.

[¶9.] A meeting of the LLC was held on May 30, 2006. Ruby moved and Kirksey seconded a motion to terminate the lease agreement. Grohmann and Randell opposed, and the motion failed. Thereafter, Ruby moved and Kirksey

seconded a motion to dissolve the LLC. This motion also failed when Grohmann and Randell opposed. All major actions taken by the LLC required a majority vote of its members. Because Grohmann and Randell had no desire to terminate the lease or dissolve the LLC, the parties remained deadlocked.

[¶10.] Kirksey and Ruby petitioned the circuit court for relief. Citing SDCL 47-34A-801, Kirksey and Ruby requested that the court dissolve the LLC because its economic purpose was unreasonably frustrated and it was not reasonably practicable to carry on the company's business in conformity with the articles of organization and the operating agreement. According to Kirksey, the strained relationship between the sisters made it impossible for any major decision making. Moreover, Kirksey claimed that "Grohmann and Randell have a personal financial interest in continuing the lease agreement and preventing dissolution of the LLC," all to her and Ruby's detriment.

[¶11.] On cross motions for summary judgment, the circuit court denied Kirksey and Ruby's petition and granted Grohmann and Randell's motion for summary judgment. Kirksey and Ruby appeal, asserting that the court erred when it granted summary judgment against judicial dissolution of the LLC.

## Analysis and Decision

[¶12.] Summary judgment is proper when the law is correctly applied and there are no genuine issues of material fact. Rush v. US Bancorp Equip. Fin., Inc., 2007 SD 119, ¶7, 742 NW2d 266, 268 (quoting Heib v. Lehrkamp, 2005 SD 98, ¶19, 704 NW2d 875, 882 (citing SDCL 15-6-56(c); Keystone Plaza Condo. Ass'n v. Eastep, 2004 SD 28, ¶8, 676 NW2d 842, 846))). Several facts are undisputed. Kirksey

Family Ranch, LLC is a family enterprise, created to keep title to land held in the family for over a century and to maintain ranching operation**s**. Each sister invested in the company her one-quarter interest in the land with the understanding that she would have an equal say in the company's operations and equal ownership in its assets. When the sisters formed the LLC, they provided no way to break a tie vote between them and no way to end a deadlock. Today, the sisters are divided and speak only through their legal counsel. There being no avenue for relief in the operating agreement, two sisters ask the courts to intervene.

[¶13.] Through SDCL 47-34A-801, the Legislature provided courts with the limited power to order dissolution of an LLC if certain statutory standards are met. Under SDCL 47-34A-801(a)(4)(i) and SDCL 47-34A-801(a)(4)(iii), a court may judicially dissolve an LLC if "the economic purpose of the company is likely to be unreasonably frustrated" or "it is not otherwise reasonably practicable to carry on the company's business in conformity with the articles of organization and the operating agreement[.]"

[¶14.] How these statutory standards may be satisfied has not yet been detailed by this Court. A consistent view in other jurisdictions is that a limited liability company is governed by its articles of organization and operating agreement. *See* Horning v. Horning Const., LLC, 816 NYS2d 877, 881 (NYSupCt 2006); Historic Charleston Holdings, LLC v. Mallon, 617 SE2d 388, 393 (SCCtApp 2005); Dunbar Group, LLC v. Tignor, 593 SE2d 216, 219 (Va 2004). Beyond this, however, there is no prevailing interpretation of the terms "not reasonably

practicable" and "economic purpose . . . unreasonably frustrated" in relation to dissolution of limited liability companies. *See* SDCL 47-34A-801.

[¶15.]    Nevertheless, the cases interpreting language similar to our statutory terminology, whether involving a partnership or a limited liability company, are instructive. In defining what it means for it to "not be reasonably practicable" for a company to continue, one court consulted a dictionary to apply a plain and ordinary meaning. Taki v. Hami, 2001 WL 672399 (MichCtApp) (unpublished) (dissolution of a partnership). The *Taki* court held that "'reasonably practicable' may properly be defined as capable of being done logically and in a reasonable, feasible manner."[1] *Id.* at 3. Another court emphasized that "[t]he standard set forth by the Legislature is one of reasonable practicability, not impossibility." PC Tower Ctr., Inc. v. Tower Ctr. Dev. Assoc., L.P., 1989 WL 63901, 6 (DelCh) (unpublished) (dissolution of a partnership). Under this view, the standard does not require that the purpose of the company, as set out in the operating agreement, be completely frustrated to warrant judicial dissolution.[2]   Rather, the term "reasonably practicable" signifies a company's ability to continue the purpose identified in the operating agreement.

---

1.    The court found that "it was not possible to complete the business of the partnership in a logical, reasonable and feasible manner." *Taki*, 2001 WL 672399, at 3. The members had not spoken to each other in years and filed three lawsuits against each other. There were also allegations of violence and attempted expulsion.

2.    The purpose of the company was to use the property for profit and as an investment. *PC Tower Ctr., Inc.*, 1989 WL 63901, at 5. Because the company was operating at a considerable loss and the prospect of future profits did not exist, the court found that it was not reasonably practicable for the company to continue. *Id.* at 6.

[¶16.] One approach, taken by several courts, is to examine the circumstances in light of the company's purpose and then determine if it is reasonably practicable to continue the business. Under this test, the Virginia Supreme Court reversed a lower court's order dissolving a limited liability company. *Dunbar Group, LLC*, 593 SE2d at 219. According to the *Dunbar* court, only when a business cannot continue "in accord with its articles of incorporation and any operating agreement" can dissolution be ordered. Despite one member of a two-member company being expelled, the court held that the company could continue, and, therefore, dissolution was not warranted.[3]

[¶17.] The Louisiana Court of Appeals similarly examined a company's operating agreement to determine if it was reasonably practicable for the business to continue. Weinmann v. Duhon, 818 So2d 206, 208-09 (LaCtApp 2002). The members of the company had no desire to continue their business relationship and began making side agreements that, in the court's view, made continued operation of the company not reasonably practicable. *Id.* at 209.

[¶18.] A Massachusetts Superior Court required that "specific provisions of the partnership agreement" be shown to establish "impracticability to carry on the

3. One member asserted that "'serious differences of opinion as to company management have arisen between the members and managers' . . . and that the company was 'deadlocked' in its ability to conduct its business affairs. . . ." *Dunbar Group, LLC*, 593 SE2d at 218. A court order had been entered finding that one member commingled the company's funds. Nevertheless, the court concluded that it was reasonably practicable for the company to continue and denied dissolution. *Id.* at 219.

business *in conformity with the partnership agreement.*"[4]  Houser v. River Loft Assocs. Ltd. P'ship, 1999 WL 33594570, 2 (MassSupCt) (unpublished) (dissolution of a partnership).[5]  In *Houser,* the plaintiff alleged that the members engaged in self dealing.  The court, nonetheless, found that the company operated for its stated purpose and denied dissolution.

[¶19.]  Finally, in *Spires v. Casterline,* a New York court engaged in a detailed analysis of the company's articles of organization and operating agreement.  778 NYS2d 259, 263 (NYSupCt 2004).  It found no basis to dissolve the company based on the terms of the articles of organization.  *Id.* at 264.  However, because the operating agreement mandated that dissolution occur before withdrawal of a member, and a member withdrew pre-dissolution, the court ordered that the company be judicially dissolved.  *Id.* at 266-67.

[¶20.]  Another consideration, expressed by two courts, is the financial state of the company.  In *Klein v. 599 Eleventh Ave. Co. LLC*, the court dismissed a petition for judicial dissolution because the plaintiff "failed to articulate facts establishing why it was not reasonably practicable for [the company] to continue to carry on its

---

4.  The plaintiff sought dissolution asserting "that the general partners have carried out a systematic course of self-dealing in which they refuse to liquidate the partnership in accordance with its investment objectives." *Houser*, 1999 WL 33594570, at 2.  The court held that the partnership was meeting its stated purpose, and therefore, denied dissolution.

5.  A Massachusetts Superior Court ordered dissolution of an LLC when the company was "not able to function in the manner intended and there is a clear and total deadlock between the sole two manager members thereof." Rapoza v. Talamo, 2006 WL 3292632, 4 (MassSuperCt) (unpublished).  The company in *Rapoza*, however, did not have an operating agreement and the members had ceased attempting to operate their businesses. *Id.*

business [and] failed to demonstrate that [the company] is failing financially[.]"
2006 WL 3849059, 4 (NYSupCt) (unpublished). Similarly, a Delaware court
declined to order dissolution because the company was serving its stated purpose
from the operating agreement and producing returns for its investors. Cincinnati
Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc., 1996 WL
506906 (DelChCt) (unpublished) (regarding a partnership).

[¶21.]     Two courts have held that a strict standard applies to judicial
dissolutions. In *Dunbar Group, LLC*, the Virginia Supreme Court ruled that a
strict standard reflects "legislative deference to the parties' contractual agreement
to form and operate a limited liability company." 593 SE2d at 219. Also holding to
an exacting standard, the court in *Horning* noted that this strictness might leave
some members at the mercy of other members, but a company cannot be dissolved
as long as it is thriving. 816 NYS2d at 883.

[¶22.]     Yet another approach to interpreting the statutory language is to
analogize dissolution of a limited liability company to dissolution of a corporation or
partnership. One such instance occurred in *Haley v. Talcott*, 864 A2d 86, 94 (Del
2004). The court used its corporate dissolution law and required three prerequisites
to judicial dissolution of a limited liability company. According to the *Haley* court, if
(1) the company had "two 50% stockholders," who (2) "engaged in a joint venture,"
and (3) were "unable to agree upon whether to discontinue the business or how to
dispose of its assets," judicial dissolution was warranted.[6]

_____

6.     The court ordered judicial dissolution. *Haley*, 864 A2d at 94-95. Although
       "the LLC can and does continue to function for its intended purpose and in
                                                          (continued . . .)

[¶23.]    Also in Delaware, a chancery court distinguished *Haley* and instead compared the statutory language to that of a limited partnership dissolution. *In re Silver Leaf*, 2005 WL 2045641, 10 (DelChCt) (unpublished). The court ordered dissolution, finding that the sole asset of the company no longer existed, and therefore, continued operation of the company was not reasonably practicable. The court also took into account that the members were deadlocked and the operating agreement provided no means to end the deadlock. *Id.* at 11.

[¶24.]    Another court, in dicta, noted that dissolution might be warranted when "'it clearly appears that the business for which the partnership was formed is impracticable, or cannot be carried on except at a loss,'" and "where 'all confidence between the parties has been destroyed so that they cannot proceed together in prosecuting the business for which it was formed.'"[7]  Percontino v. Camporeale, 2005 WL 730234, 3 (NJSupCt) (unpublished).

[¶25.]    Here, the operating agreement for the Kirksey Family Ranch, LLC states:

> The *purpose* for which this organization is created *is to engage in a general livestock and ranching business*; to feed, range, graze, herd, control, brand, care for, purchase, market and sell

---

(. . . continued)
    conformity with the agreement," the court held that "this operation is purely a residual, inertial status quo that just happens to exclusively benefit one of the 50% members. . . ." *Id.* at 96. The parties could not function together and could not decide what to do with the LLC's assets or take any important actions that required a majority vote. Dissolution was further warranted because without relief the dissociated member would still be personally liable on the company's mortgage.

7.    Dissolution was not warranted in this case because the court ordered an alternative form of relief. *Percontino*, 2005 WL 730234, at 4.

> livestock of every kind, both on its own account and as an agent
> for other persons, organizations or corporations; to buy, lease,
> cultivate, manage, operate and sell ranch properties and
> products therefrom both on its own account and as an agent for
> other persons, organizations or corporations; and, take, buy,
> exchange, lease or manage and develop such property and
> interests in any manner that may be necessary, useful or
> advantageous for the purposes of this organization.

(Emphasis added). From this language, it is clear that the intended business was a "livestock and ranching" operation.

[¶26.]     There is no dispute that the ranching and livestock operation, as a business, can continue despite the sisters' dissension. However, the question is whether it is reasonably practicable for the company to continue *in accordance with* the operating agreement. The sole asset of the company is the Kirksey land. This land is currently leased to only two sisters. Kirksey and Ruby contend that the lease is no longer beneficial to the company. The rental rate was set when the land was worth considerably less, and the company, no matter the extent of profits, is required to pay the taxes and insurance. Grohmann and Randell, however, assert that Kirksey and Ruby were aware of the nominal profit margin when the company was formed and that nothing has changed to make it impracticable for the company to continue.

[¶27.]     The sisters created their company with the understanding that they would have relatively equal say in its overall management and operation. Although each sister has an equal vote, there no longer exists equality in the decision making. Grohmann and Randell have all the power with no reason to change the terms of a lease extremely favorable to them. Leaving two sisters, half the owners, with all the power in the operation of the company cannot be a reasonable and practicable

operation of a business. Moreover, their deadlock certainly impedes the continued function of the business in conformity with its operating agreement. No procedure exists in the company's documentation to break a tie vote and protect the company in the event of changed conditions. As long as the company remains in control of, and favorable only to, half its members, it cannot be said to be reasonably practicable for it to continue in accord with its operating agreement.

[¶28.]    Another statutory standard Kirksey and Ruby rely on is found in SDCL 47-34A-801(a)(4)(i): "[t]he economic purpose of the company is likely to be unreasonably frustrated." What it means for the economic purpose of a company to be unreasonably frustrated has not been clearly delineated. There are few cases on the subject. Two decisions have ordered judicial dissolution when extreme dissension between the members was present. Navarro v. Perron, 19 CalRptr3d 198, 200-01 (CalCtApp 2004) (dissolution of a partnership); Pankratz Farms, Inc. v. Pankratz, 95 P3d 671 (Mont 2004) (dissolution of a partnership). However, those cases had other factors that led the court to dissolve the companies. *Navarro*, 19 CalRptr3d at 200-01 (in addition to the dissension the parties filed multiple lawsuits and restraining orders); *Pankratz*, 95 P3d at 680-81 (the business of the partnership was effectively transferred).

[¶29.]    Here, we have two members of an LLC that hold all the power, with the other two having no power to influence the company's direction. We recognize that forced dissolution is a drastic remedy and may produce financial repercussions for the sisters, but how can one reasonably conclude that the economic purpose of this company is not reasonably frustrated? The members cannot communicate

regarding the LLC except through legal counsel. The company remains static, serving the interests of only half its owners. They neither trust nor cooperate with each other. The sisters formed their company contemplating equal ownership and management, yet only an impenetrable deadlock prevails.

[¶30.]       We conclude that the economic purpose of the Kirksey Family Ranch, LLC is being unreasonably frustrated, and it is not reasonably practicable to carry on the LLC's business in conformity with its articles of organization and operating agreement. The circuit court erred when it granted Grohmann and Randell summary judgment. We remand for an order of judicial dissolution and winding up of the company's business under SDCL 47-34A-806.

[¶31.]       Reversed and remanded.

[¶32.]       GILBERTSON, Chief Justice, and SABERS and ZINTER, Justices, concur.

[¶33.]       MEIERHENRY, Justice, concurs with a writing.


MEIERHENRY, Justice (concurring).

[¶34.]       I agree that under the circumstances of this case, the LLC should be dissolved. Neither the legislation nor the LLC agreement provided a procedure or remedy in the event of deadlock. Without such a provision, the LLC is at a stalemate; and the court is left with few alternatives. As Justice Konenkamp points out, other courts have faced this same issue with varying results depending on the circumstances of each case. The undisputed facts of this case sufficiently meet the statutory requirements for dissolution in SDCL 47-34A-801(a)(4)(i) or (iii).