2017 IL App (3d) 160022

Opinion filed February 17, 2017

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2017

| | | |
|---|---|---|
| MARTHA E. PALMER, MICHELE L. GREEN, LUANN L. CLARK, JOEL L. WATKINS, MATTHEW B. WATKINS, JENNIFER L. MCCARTHY, ASHLEY WATKINS, JOHN W. WATKINS, MARY J. CARLSON, RICHARD L. WATKINS, ROSE M. MURPHY, RONALD P. WATKINS, DANIEL B. WATKINS, ROBERT J. WATKINS, ALBERT K. WATKINS, JAMES L. WATKINS, STEPHEN N. WATKINS, JO GREENSLET JONES, JANE MARIE GREENSLET, KENNETH A. GREENSLET, and JOHN M.GREENSLET, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Marshall County, Illinois. Appeal No. 3-16-0022 Circuit No. 14-MR-34 |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) ) | |
| CHRIS E. MELLEN, PAUL H. MELLEN, DENNIS L. MELLEN, CYNTHIA A. PARRY, and DAVID L. MELLEN, | ) ) ) ) | Honorable Michael P. McCuskey, |
| Defendants-Appellants. | ) | Judge, Presiding. |

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justices O'Brien and Schmidt concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs, Martha E. Palmer and other relatives, filed a complaint seeking dissolution of a family land trust and partnership against the remaining partners, Chris E. Mellen and his siblings. The trial court granted summary judgment in favor of plaintiffs. On appeal, defendants argue that the trial court erred in (1) ruling, as a matter of law, that the partnership should be dissolved, (2) ignoring provisions of the partnership agreement, (3) denying their motion to strike plaintiffs' affidavits, and (4) ordering the trust property sold at public auction by a named auctioneer. We affirm.

¶ 2    In 1977, Albert Leslie Watkins and Rose Frances Watkins (grantors), as husband and wife, formed the "Watkins Enterprises Land Trust/Partnership Agreement." Albert passed away a few months after the partnership agreement was created, and Rose died in 1989. Under the terms of the agreement, 1112 shares were initially issued to Albert and Rose's children and their then-living grandchildren. Their children have since distributed portions of their shares to their descendents. The partnership's primary asset is 450 acres of land, of which 280 acres are tillable and 120 acres are covered in trees and include a cabin.

¶ 3    The partnership agreement provides that "[w]hen two or more Persons own Shares, a Partnership shall thereupon be created and be governed, except as otherwise provided in this Agreement, by the Partnership Act." Article 2 of the partnership agreement defines the business of the partnership as "farming and related activities." Article 9 describes the termination process and states that the partnership "shall terminate upon the first to occur of the bankruptcy, receivership or dissolution of the partnership, or the written agreement of all the Shareholders."

¶ 4    The trustee of the partnership is assigned certain duties under article 11 of the agreement. Specifically, section 11.08 states:

"The Trustee shall have the following powers and discretions and, except to the extent inconsistent herewith, any others that may be granted by law:

(a) To sell any portion of the Property for cash or on credit, at public or private sales; to exchange any portion of the Property for other property; to grant options to purchase or acquire any portion of the Property and to determine the prices and terms of sales, exchanges and options."

¶ 5    Currently, there are 26 partners under the trust and partnership agreement. Plaintiffs comprise 21 of the 26 partners and collectively hold 926.67 shares in the partnership (83.33%). Defendants, the remaining 5 partners, hold 185.33 shares (16.67%). Plaintiffs include two of the grantors' three living children, Martha E. Palmer and Joel L. Watkins, 23 grandchildren, and one great-grandchild. The five defendants are all children of the grantors' third child, Georga Mellen. The trustee of the partnership is plaintiff Robert J. Watkins, who is also a partner. According to the terms of the agreement, the partnership is governed by a management committee made up of five partners, including defendant Chris Mellen.

¶ 6    In 2012, several partners indicated to the trustee that they would like to be "bought out" by the partnership, but the partnership did not have sufficient funds to purchase the partners' shares. On July 3, 2012, four of the five members of the partnership's management committee voted in favor of selling the property at public auction in an attempt to raise funds for the buyout and to allow any interested partner an equal right to purchase the property. Chris Mellen voted against the sale and requested, instead, that the property be appraised.

¶ 7    Three appraisals were then completed. They indicated that the entire 450 acres, including the cabin, were valued at (1) $2,634,000, (2) $3,160,000, and (3) $3,256,000. The appraisals also

provided subdivided parcel reports that valued the pasture and timber areas at (1) $3960 per acre, (2) $3075 per acre, and (3) $3412 per acre.

¶ 8        Shortly thereafter, Chris Mellen and Paul Mellen made several offers to purchase the timbered portions of the property or, in the alternative, the entire parcel. The first offer to purchase the entire parcel proposed a purchase price based on the average of the three appraisals, $3,016,666, minus the average value of the cabin and 50% of the closing costs for 2012. The second offer did not include a reduction for 50% of the 2012 closing costs. All of their offers were rejected by the partners.

¶ 9        In the summer of 2013, Trustee Watkins began making plans to sell the partnership property. He contacted Doug Hensley, a local real estate agent and auctioneer, and asked him to work on a proposal for public auction.

¶ 10        On November 21, 2014, plaintiffs filed a complaint seeking judicial dissolution of the partnership and supervision of the partnership's winding up. In the complaint, plaintiffs alleged that the partnership's economic purpose has been unreasonably frustrated and that defendants had engaged in conduct making it impracticable to continue carrying on partnership business. As such, plaintiffs requested dissolution and a sale of the partnership real estate on the open market under section 801(5) of the Uniform Partnership Act (1997) (Act) (805 ILCS 206/801(5) (West 2014)). Defendants moved to dismiss the complaint pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2014)).

¶ 11        Plaintiffs filed a motion for summary judgment. Attached to the summary judgment motion were numerous affidavits submitted by plaintiffs as partners. The affidavits stated that defendants Chris Mellen and Paul Mellen had verbally and physically intimidated and threatened individual plaintiffs, were vocally aggressive at committee meetings, and refused to participate in

4

partnership meetings. The affidavits further averred that all five defendants had failed to respond to any correspondence from the partnership to participate in the business of the partnership.

¶ 12 The trial court denied defendants' motion to dismiss. Defendants then filed an answer to the complaint and a response to plaintiffs' motion for summary judgment. In their responsive pleading, defendants argued that the partnership agreement required the written consent of all the partners, except for ministerial acts, and that before the real estate could be sold, all of the partners had to agree that a public sale was appropriate. They also filed a motion to strike the affidavits attached to plaintiffs' summary judgment motion, which was denied. Both parties subsequently filed supplemental affidavits in support of their summary judgment pleadings.

¶ 13 Following arguments by counsel, the trial court granted summary judgment in favor of plaintiffs. The trial court found that the value of the partnership real estate was decreasing to the prejudice of the parties and that it was in the best interests of the partners to sell the property. In reaching its decision, the court noted that relationships among the partners had irreparably deteriorated and that defendants Chris Mellen and Paul Mellen had engaged in conduct related to the partnership business that made it "not reasonably practicable" to carry on the business in partnership with them. The court ruled that the events requiring dissolution under section 801(5) of the Act had occurred, finding that (1) the economic purpose of the partnership was likely to be unreasonably frustrated, (2) partners had engaged in conduct related to the partnership business that made it not reasonably practicable to carry on the business in partnership with that partner, and (3) it was not otherwise reasonably practicable to carry on the partnership business in conformity with the partnership agreement.

¶ 14 The trial court ordered that the partnership be dissolved pursuant to section 801(5) of the Act and that the winding up of the business be subject to judicial supervision as requested under

5

section 803(a). The court further ordered that the land trust property be sold at public auction "by Gorsuch-Hensley Real Estate and Auction, Inc., or by an alternative suitable auctioneer or agent selected by the Trustee of the Partnership and approved by the Court."

¶ 15                                    ANALYSIS

¶ 16                                        I

¶ 17      Defendants argue that the trial court erred in dissolving the partnership under section 801(5) of the Act at the summary judgment stage. They claim that the trial court erred in finding that defendants engaged in conduct related to the partnership making it not reasonably practicable to carry on business with other partners or in conformity with the land trust agreement under sections 801(5)(ii) and (iii). They also maintain that dissolution was inappropriate under section 801(5)(i) because the economic purpose of the business partnership is still profitable.

¶ 18      Section 801 of the Uniform Partnership Act provides:

> "Events causing dissolution and winding up of partnership business. A partnership is dissolved, and its business must be wound up, only upon the occurrence of any of the following events:
>
> *  *  *
>
> (5) on application by a partner, a judicial determination that:
>
> (i) the economic purpose of the partnership is likely to be unreasonably frustrated;
>
> (ii) another partner has engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with that partner; or

6

(iii) it is not otherwise reasonably practicable to carry on the partnership business in conformity with the partnership agreement[.]" 805 ILCS 206/801(5) (West 2014).

¶ 19    The Uniform Partnership Act was enacted in Illinois in 2002. See Pub. Act 92-740, art.VIII, § 801 (eff. Jan. 1, 2003). Prior to the Act, the partnership statute provided that:

"(1) On application by or for a partner the court shall order a dissolution whenever:

* * *

(c) a partner has been guilty of such conduct as tends to affect prejudicially the carrying on of the business,

(d) a partner willfully or persistently commits a breach of the partnership or agreement, or otherwise so conducts himself in matter relating to the partnership business that is not reasonably practicable to carry on the business in partnership with him[.]" 805 ILCS 205/32(1) (West 2000).

¶ 20    While there are few cases interpreting section 801(5) of the current act, there are a number of cases interpreting similar provisions found in section 32(1). Courts interpreting the pre-2002 statute have held that where the relations among partners had deteriorated to such an extent that the partners no longer functioned in partnership with each other, the partnership should be dissolved. See *Tembrina v. Simos*, 208 Ill. App. 3d 652, 658 (1991); *Susman v. Cypress Venture*, 114 Ill. App. 3d 668, 675 (1982). In *Tembrina*, the court ordered the dissolution of the partnership. In doing so, the court stated that it was apparent that animosity existed between the partners and that they were unwilling to cooperate with each other. The appellate court also took note of the actions of one partner in causing the partnership property to

be conveyed into his individual name and failing to pay real estate taxes. *Tembrina*, 208 Ill. App. 3d at 658; see also *Susman*, 114 Ill. App. 3d at 675 (when relationship existing between partners renders it impracticable for them to conduct business beneficially, dissolution is proper).

¶ 21          Courts in other jurisdictions have also interpreted provisions identical to the language of the Act and have reached similar conclusions. In *Kirksey v. Grohmann*, 2008 SD 76, 754 N.W.2d 825, plaintiffs sought dissolution under the state's partnership statute and the South Dakota Supreme Court discussed what it meant to be "reasonably practicable." *Id*. ¶¶ 13-17. The court recognized that while forced dissolution is a drastic remedy, it is appropriate where the economic purpose of the company is reasonably frustrated and it is not reasonably practicable to carry on the partnership business. In that case, four sisters inherited their family's ranch. They formed a limited liability company conveying interest in the property to the company in exchange for equal ownership. Two sisters leased the property at a rate set in the operating agreement, which had fallen below market value. As a result, the two other sisters wanted to raise rent prices. The sisters could not communicate regarding the company except through legal counsel, and they refused to reach an agreement. *Id*. ¶¶ 7-8.

¶ 22          The court determined that it was not reasonably practicable to carry on company business, defining "reasonably practicable" under its plain and ordinary usage as "capable of being done logically and in a reasonable, feasible manner." *Id*. ¶ 15. It noted that the sisters did not trust or cooperate with each other and were unable to conduct business efficiently. The court agreed that the company business of ranching could carry on despite the sisters' dissension but that the unequal distribution of financial gain and the inability to agree on a company vote meant that "the operation of the company cannot be a reasonable and practicable operation of a business." *Id*. ¶ 27. The court reiterated that the standard set forth was one of reasonable

8

practicability, not impossibility. It concluded that dissolution and the winding up of company business was an appropriate remedy given the unrelenting impasse the company faced. *Id*. ¶ 26.

¶ 23 Similarly, in *Brennan v. Brennan Associates*, 977 A.2d 107 (Conn. 2009), the Connecticut Supreme Court considered a demand for judicial dissociation of a partner from a partnership based on language parallel to that in sections 801(5)(ii) and (iii). *Id*. at 120. Two partners no longer trusted the third partner, who was the majority shareholder following the death of the fourth partner. The court found that the mistrust was justified and was relevant in determining whether the acrimony in the partnership was so pervasive that dissociation was warranted. *Id*. at 119-20. The court held that "an irreparable deterioration of a relationship between partners is a valid basis to order dissolution" and, therefore, was a valid basis for the alternative remedy of dissociation. *Id*. at 120.

¶ 24 Here, defendants refused to agree to the sale of the property and will not directly communicate with plaintiffs. It has become impracticable for plaintiffs to carry on the partnership with them. Under the terms of the partnership agreement, a unanimous vote is required for a decision to dissolve, and the partners are unable to reach a unanimous decision. Moreover, it is undisputed that defendants have harassed individual plaintiffs, refused to correspond regarding partnership business, and refused to participate in necessary meetings and voting procedures. It is also undisputed that personal and professional relationships between defendants and plaintiffs have suffered irreversible damage. Defendants' tactics have deprived the majority of the partners of realizing any benefit from the partnership.

¶ 25 Under these circumstances, there is no genuine issue of fact that (1) the partners have engaged in conduct relating to the partnership that has made it not reasonably practicable to carry on the business in partnership and (2) it is not otherwise reasonably practicable to carry on the

9

land trust business in conformity with the family's partnership agreement. Section 801(5) of the Act clearly denotes that a judicial determination of only one factor is required to support an order dissolving a partnership. See 805 ILCS 206/801(5)(i)-(iii) (West 2014); *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 145 (2006) (use of the word "or" is disjunctive and denotes different alternatives). Accordingly, the trial court did not err in granting summary judgment in favor of plaintiffs and dissolving the partnership under section 801(5).

¶ 26                                                                 II

¶ 27        Defendants also argue that the trial court's order dissolving the partnership impermissibly circumvented the language of the agreement. They claim the agreement provides that plaintiffs can transfer shares back to the partnership as a buyout if they wish to leave the partnership and the agreement does not contemplate the sale of partnership property unless the partners unanimously consent.

¶ 28        Partnership agreements may be used to govern relations among and between the partners in derogation of the Act. However, the statute lists several nonwaivable provisions that cannot be varied or altered by a partnership agreement, including the requirement to wind up the partnership business as specified in section 801(5). 805 ILCS 206/103(b) (West 2014); see generally *1515 North Wells, L.P. v. 1513 North Wells, L.L.C.*, 392 Ill. App. 3d 863, 868 (2009) (partnership agreement, stating that general partner could engage in "whatever activities" he chose, did not contract away the fiduciary duty general partner owed limited partners under the Act).

¶ 29        Here, the plain language of the partnership agreement demonstrates that defendants' arguments must fail. No provision in the partnership agreement allows a partner to voluntarily tender his or her shares back to the partnership or to the other partners in exchange for their value

unless that partner receives a *bona fide* purchase offer for the shares from a person who is not a descendent of the grantors or a partner dies. Article 7 of the partnership agreement provided that if a partner receives an offer to purchase his shares from someone other than a descendent of the grantors, the right of first refusal provision applies. In the event of an interested buyer, the partner must transmit an offer to both the partnership and the other partners first as provided in section 7.01 of the agreement. Article 7 also provides for the purchase of partnership shares upon the occurrence of a "trigger event," defined as "the death of a [p]artner." Article 8 describes the procedure to determine the purchase price of shares sold under the agreement. It does not provide a partner with the right to force a sale of his shares to the partnership or to the other partners. Thus, nothing in the agreement gives plaintiffs the ability to force the partnership or the remaining partners to "buy out" their shares.

¶ 30        Even if the agreement contained a buyout provision or a provision for dissolving the business and selling the land trust property, certain provisions of the Act cannot be varied or altered by any partnership agreement, including dissolving the partnership and the winding up of partnership business as specified in sections 801(4), (5), or (6). See 805 ILCS 206/801(5), 103(b)(7) (West 2014). Thus, the terms of the agreement do not prevent the partners from filing a petition to judicially dissolve the partnership under section 801(5) of the Act or the court from entering a dissolution order where a provision in section 801(5) has been met.

¶ 31                                        III

¶ 32        Defendants next contend that the trial court erred in denying their motion to strike plaintiffs' affidavits submitted in support of plaintiffs' motion for summary judgment. Defendants argue that the affidavits fail to comply with Illinois Supreme Court Rule 191 (eff.

11

Jan. 4, 2013), which requires that such affidavits set forth with particularity the facts upon which the affiant relied, and should have been stricken by the trial court.

¶ 33        Illinois Supreme Court Rule 191 provides in relevant part:

"Affidavits in support of *** a motion for summary judgment under section 2-1005 of the Code of Civil Procedure *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013).

In general, this court reviews a circuit court's decision on a motion to strike an affidavit for an abuse of discretion, but when the motion "was made in conjunction with the court's ruling on a motion for summary judgment," we employ a *de novo* standard of review with respect to the motion to strike. *Jackson v. Graham*, 323 Ill. App. 3d 766, 773 (2001).

¶ 34        Here, we find no error in the trial court's denial of defendants' motion to strike plaintiffs' affidavits. Plaintiffs' affidavits established several material facts that were undisputed. They set forth averments containing specific examples of tenuous situations between the partners. They also provided facts regarding partnership procedures and committee meetings and plaintiffs' failed attempts to correspond with defendants. All of the affidavits established that there had been an irreparable deterioration of the relationship between plaintiffs and defendants as partners. The trial court's denial of the motion to strike is affirmed.

¶ 35                                        IV

12

¶ 36    Last, defendants claim that the trial court erred in ordering that the real estate be sold at public auction and naming the auctioneer *sua sponte*.

¶ 37    On application of a partner, the court may, "for good cause shown," order judicial supervision of liquidation of the partnership or, as the statute provides, the "winding up" of partnership business. 805 ILCS 206/803(a) (West 2014). In this case, the trial court found that good cause had been shown for judicial supervision and ordered that the partnership property be sold at public auction by Gorsuch-Hensley Real Estate and Auction. Defendants do not challenge the trial court's finding of good cause. Accordingly, we find that the trial court's supervision of the winding up of business was proper and that its order directing the sale of partnership property was appropriate. See 805 ILCS 206/803(a) (West 2014).

¶ 38    Defendants also argue that the court erred in specifically naming an individual auctioneer. The affidavit of Doug Hensley, the auctioneer assigned by the court, demonstrated that his firm had prepared marketing materials for the auction in 2013 and had entered into a prior contract with the partnership to conduct the auction. Appointing an auctioneer who was familiar with the property is financially advantageous to the partnership and its assets. See *Higgins v. Higgins*, 72 Ill. App. 2d 179, 190-91 (1966) (economic conditions and financial benefits are important factors in decisions liquidating partnership property). Under the circumstances, we find that the trial court did not abuse its discretion in appointing Hensley as the auctioneer, or in the alternative, providing the trustee with the power to select another suitable auctioneer.

¶ 39                                    CONCLUSION

¶ 40    The judgment of the circuit court of Marshall County is affirmed.

¶ 41    Affirmed.