# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 11-1557


## IN THE MATTER OF CAT ISLAND CLUB, L.L.C.


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 240,286
HONORABLE HARRY FRED RANDOW, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Elizabeth A. Pickett, Judges.


**AFFIRMED.**

William M. Ford
P. O. Box 12424
Alexandria, LA 71315-2424
Telephone: (318) 442-8899
COUNSEL FOR:
    Appellee - Court Appointed Liquidator

Charles Ray Minyard
P. O. Box 3642
Lafayette, LA 70502
Telephone: (337) 266-2300
COUNSEL FOR:
    Appellee - Craig A. Davis

Ricky L. Sooter
Provosty, Sadler, deLaunay, Fiorenza & Sobel, APC
P. O. Box 1791
Alexandria, LA 71309-1791
Telephone: (318) 445-3631
COUNSEL FOR:
    Appellants - Tommy Pentecost and David Gaspard, Jr.

**John W. Munsterman**
**P. O. Box 1848**
**Alexandria, LA 71309-1848**
**Telephone:  (318) 445-6111**
**COUNSEL FOR:**
**Appellee - Ty-Bar Industries, Inc.**

**THIBODEAUX, Chief Judge.**

Two members of a limited liability company appeal the grant of a summary judgment seeking dissolution of the company and the appointment of a liquidator of the company's property. We affirm the trial court's judgment in favor of Ty-Bar, one of the members of the limited liability company, for the reasons expressed below.

I.

## ISSUES

We must decide:

(1) whether the trial court erred in granting Ty-Bar's motion for summary judgment seeking dissolution of the limited liability company; and

(2) whether the trial court erred in appointing a liquidator to sell the property of the limited liability company.

II.

## FACTS AND PROCEDURAL HISTORY

Cat Island Club, L.L.C. (LLC) was formed on March 16, 2000. George C. Gaiennie, III, registered agent for the LLC, executed the Articles of Organization and the Initial Report and filed these documents with Louisiana's Secretary of State. The Initial Report listed seven initial members of the LLC:

1. Ty-Bar Industries, Inc. (Ty-Bar)
2. Craig A. Davis (Davis)
3. Tommy Pentecost (Pentecost)
4. David L. Gaspard, Jr. (Gaspard)
5. Brent Odom Bencaz (Bencaz)
6. Daniel Thomas Fontenot (Fontenot)
7. Martin James Fischer (Fischer)

Ty-Bar is owned by Dean Tyler and William C. Barron. They solicited members for the formation of the LLC to purchase land for a hunting and camping spot in West Feliciana Parish.

On April 7, 2000, Ty-Bar purchased 383.46 acres of land, in its own name, for $350,000.00 and collected capital contributions from the other members of the LLC. Pentecost, Gaspard, and Davis made capital contributions of $50,000.00 each, paying $10,000.00 in cash and signing promissory notes for the $40,000.00 balances, in favor of Ty-Bar. Bencaz paid $50,000.00 in cash to Ty-Bar. The record does not reflect the amount of the capital contribution of Ty-Bar, though it appears that $50,000.00 was the anticipated amount. Pentecost and Gaspard aver that on April 7, 2000, they signed an original *twelve-page* Operating Agreement reflecting seven members who each owned an equal 1/7 membership interest in the company, but they did not retain a copy for their own files.

Three months later, on July 7, 2000, without amendment or further documentation, Ty-Bar executed an *eleven-page* Operating Agreement which lists only five "initial" members. This Operating Agreement indicates that Ty-Bar owns 3/7 membership interest, and therefore 3/7 of the voting power, in the LLC. It further contains a new death clause, according to Pentecost and Gaspard, and it is missing the signature blocks for Fontenot and Fischer, who, as it turns out, never made their capital contributions. The *last* page of the Operating Agreement in the record indicates at the bottom center that it is "Page 11 of 12 Pages." Pentecost and Gaspard aver that the twelve-page Operating Agreement they signed in April was changed after they signed it.

On July 7, 2000, Ty-Bar, as seller, executed an Act of Cash Sale, conveying the 383.46 acres of land to the LLC, for $500,000.00, not $350,000.00, and the land was encumbered by Ty-Bar's mortgage with Red River Bank. The bank's mortgage is not in the record, and the amount of the mortgage is not known. As in the

Operating Agreement, the signature and notary blocks for each of the members of the LLC are at the back of the sale document, on pages with no text, and are executed and notarized in different cities. As in the Operating Agreement, Pentecost and Gaspard signed in Alexandria on April 7, 2000; Bencaz signed in Baton Rouge on April 7, 2000; Craig Davis signed in Lafayette on June 29, 2000; and Ty-Bar signed last, as a member of the LLC, in Alexandria on July 7, 2000.[1]

Bencaz died, and his representative sold his interest in July 2010 to the other members of the LLC for $22,000.00. Pentecost and Gaspard believed, prior to Bencaz's death, that each member owned an equal 1/5 of the LLC. Pentecost and Gaspard transmitted $22,000.00 for Bencaz's interest, but $11,000.00 was returned to them. Ultimately, Ty-Bar purchased one half of Bencaz's interest for $11,000.00, and Pentecost and Gaspard purchased the other half for $5,500.00 each. The fourth remaining member, Craig Davis, did not purchase any of Bencaz's interest.

In December 2010, Ty-Bar filed a petition to dissolve the LLC and subsequently filed a motion for summary judgment on that issue. Craig Davis supported dissolution. Pentecost and Gaspard filed an opposition. The trial court granted the motion for summary judgment ordering dissolution of the LLC, and it appointed William Ford as liquidator. Pentecost and Gaspard filed this appeal.

III.

**STANDARD OF REVIEW**

Appellate courts review summary judgments de novo, applying the same criteria as the district court in determining whether summary judgment is appropriate. *Schroeder v. Board of Supervisors of Louisiana State Univ.*, 591 So.2d 342 (La.1991). A summary judgment shall be granted if the pleadings, depositions, answers to

---

[1]On July 2, 2001, a year after selling the land to the LLC, Ty-Bar sold timber off of the land to Tyler Timber, Inc. for $190,500.00. Dean Tyler signed as buyer for Tyler Timber, Inc. While there was no reservation of timber rights in the sale document, Pentecost and Gaspard aver that it was discussed by the members of the LLC that Ty-Bar would receive the first timber proceeds as payment for its interest in the LLC.

3

interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).

## IV.

## <u>LAW AND DISCUSSION</u>

Pentecost and Gaspard contend that the trial court erred in granting Ty-Bar's motion for summary judgment seeking dissolution of the LLC. They argue that dissolution of the LLC and liquidation of the property was improper and that the asset, the land, should be put in the possession of the members and partitioned in kind.

### *Dissolution*

The formation and operation of limited liability companies in Louisiana is governed by La.R.S. 12:1301, et seq. In his Written Reasons for Judgment, the trial judge took the eleven-page Operating Agreement at face value and found that the majority votes of the LLC (Ty-Bar's 3/7 and Davis's 1/7) had approved dissolution under La.R.S. 12:1318. We find that judicial dissolution was proper under La.R.S. 12:1335, but not dissolution based upon majority consent under La.R.S. 12:1318, because of the disputes over the Operating Agreement, the percentages of membership interests expressed in the Operating Agreement, and the manner in which the deceased member's interest was acquired. The statutory distinction is significant because it affects the distribution of the net assets after liquidation.

More specifically, La.R.S. 12:1334, entitled "Dissolution," provides in pertinent part:

> Except as provided in the articles of organization or a written operating agreement, a limited liability company is dissolved and its affairs shall be wound up upon the first to occur of the following:
>
> . . . .

4

(2) The consent of its members in accordance with R.S. 12:1318.

. . . .

(4) Entry of a decree of judicial dissolution under R.S. 12:1335.

Here, the Articles of Organization are very general and only address dissolution to the extent that a person dealing with the LLC can rely upon a certificate executed by a representative of Ty-Bar. The Operating Agreement entered into the record does not specifically address the dissolution of the LLC, and the portion stating that Ty-Bar's membership interest is greater is in dispute. Therefore, based upon La.R.S. 12:1334(2), if the LLC's Operating Agreement or its Articles of Organization do not provide for the dissolution of the company, the LLC can be dissolved by the consent of the majority under La.R.S. 12:1318.

Statutory dissolution by consent under La.R.S. 12:1318 provides that one member gets a single vote, and it takes a majority of those single votes to dissolve the LLC. More specifically, in pertinent part, La.R.S. 12:1318, entitled, "Voting rights of members," provides (emphasis added):

A. *Unless otherwise provided* in the articles of organization or a written operating agreement, *each member* of a limited liability company *shall be entitled to cast a single vote* on all matters properly brought before the members, and *all decisions of the members shall be made by majority vote of the members*.

B. Unless otherwise provided in the articles of organization or a written Operating agreement, a majority vote of the members shall be required to approve . . . :

(1) The dissolution and winding up of the limited liability company.

(2) The sale, exchange, lease, mortgage, pledge, or other transfer of all or substantially all of the assets of the limited liability company.

5

Here, since Bencaz passed away, there are only four remaining members of the LLC. With Davis and Ty-Bar voting in favor of dissolution, and Pentecost and Gaspard voting against it, the vote is two for and two against, and there is no majority consent under R.S. 12:1318, and, therefore, no consent under the consent portion of the dissolution statute, La.R.S. 12:1334(2).[2]

Notwithstanding, an LLC can also be dissolved under La.R.S. 12:1334(4) through the entry of a decree of dissolution under La.R.S. 12:1335. Section 1335, entitled "Judicial dissolution," provides:

> On application by or for a member, any court of competent jurisdiction may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement.

While Pentecost and Gaspard argue that judicial dissolution under La.R.S. 12:1335 is not applicable because it is still "reasonably practicable" to carry on the business of the LLC, we disagree. Numerous assertions and accusations have arisen surrounding the operation of the LLC and the ownership interest of the members. There also appear to be competing interests regarding the use of the land, the only asset of the company, and the reason for which the LLC was created. In alleging a fraudulent Operating Agreement, Pentecost and Gaspard clearly believe there is self-dealing on the part of Ty-Bar. Ty-Bar and Davis want dissolution and liquidation of the land while Pentecost and Gaspard do not. The members have

---

[2] Pentecost and Gaspard assert that prior to Bencaz's death, they believed that the five members, Ty-Bar, Davis, Bencaz, Pentecost, and Gaspard, each owned 1/5 of the LLC. Ty-Bar argues that Pentecost and Gaspard had to have known that Ty-Bar had a greater interest because when they purchased part of Bencaz's interest, the Cash Sale stated that Ty-Bar was buying 3/6 of Bencaz's interest, and that Davis, Pentecost, and Gaspard were buying 1/6 each of Bencaz's interest. We find that of no moment for several reasons: the Cash Sale in the record is not signed by any LLC member; it does not represent what ultimately occurred, as Davis did not purchase any of Bencaz's interest; it is dated July 15, 2010, ten years after the LLC's formation and just five months before Ty-Bar filed its petition for dissolution; Pentecost and Gaspard aver that they sent a check for $22,000.00 to purchase Bencaz's interest, but one half, or $11,000.00, of their transmittal was returned to them.

clearly reached an inability to work toward any goals or reasons for continued association with each other.

There is very little Louisiana jurisprudence interpreting the limited liability statutes, even though the Limited Liability Company Law has been enacted since 1992. We find *Weinmann v. Duhon*, 01-1267 (La.App. 5 Cir. 3/26/02), 818 So.2d 206, *writ denied*, 02-2082 (La. 11/1/02), 828 So.2d 574, *on subsequent appeal*, 08-186 (La.App. 5 Cir. 10/28/08), 997 So.2d 647, *writs denied*, 08-2814, 08-2815, 08-2830 (La. 3/13/09), 5 So.3d 117-118, instructive in its application of La.R.S. 12:1335. There, the fifth circuit found that the trial court lacked authority to set aside various provisions of the LLC's operating agreement that had led to an impasse among its members, and that the court should have ordered the LLC's dissolution after it was requested by two of its owners.

Similarly, we find that it is not reasonably practicable to carry on business among the members and that judicial dissolution was proper under La.R.S. 12:1334(4) and La.R.S. 12:1335.

### *Liquidation*

Pentecost and Gaspard take the position that instead of dissolution and liquidation, the only asset of the LLC, the 383.46 acres of land, should be placed in the possession of the members, so that they can effect a partition in kind. Ty-Bar and Davis argue that this would result in another lawsuit and that the trial court was authorized to appoint a liquidator under La.R.S. 12:1335 and La.R.S. 12:1336(B). The trial court found that Pentecost and Gaspard had no interest in the land itself under La. R.S. 12:1329 and, therefore, had no cause of action for a partition of the land. The court then appointed the liquidator, William Ford. Pentecost and Gaspard assert that it was error to do so. We disagree.

7

Louisiana Revised Statute 12:1329 states that: "[a] membership interest shall be an incorporeal movable. A member shall have no interest in limited liability company property." Our jurisprudence has interpreted this to mean that individuals cannot assert property claims as members of an LLC where the disputed property interests are the property of the separate legal entity. *See Kelly v. Porter*, 08-4310 (U.S. E.D. La. 1/22/10), 687 F.Supp.2d 632; *Northeast Realty, L.L.C. v. Misty Bayou, L.L.C.*, 40,573 (La.App. 2 Cir. 1/25/06), 920 So.2d 938; *Van Meter v. Gutierrez*, 04-0706 (La.App. 4 Cir. 2/16/05), 897 So.2d 786.

We note however, that, while the statutes prohibit a member from demanding that a distribution be in the form of property, see La.R.S. 12:1326,[3] in post-dissolution proceedings, the statutes do not prohibit the liquidator from making a distribution in the form of movable or immovable property. *See* La.R.S. 12:1340(D).[4]

Additionally, La.R.S. 12:1336, entitled "Winding up," provides for the appointment of a liquidator, as follows (emphasis added):

> A. Except as otherwise provided in the articles of organization or a written operating agreement, *upon dissolution the members shall wind up the limited liability company's affairs*. The windup of the limited liability company's affairs *may be conducted by appointment of one or more liquidators to conduct the windup and liquidation*. However, such appointment shall not be operative until both of the following occur:

---

[3] Louisiana Revised Statute 12:1326, entitled "Distribution in kind," provides:

> Except as provided in a written operating agreement, a member, regardless of the nature of the member's contribution, shall have no right to demand and receive any distribution from a limited liability company in any form other than cash. No member shall be compelled to accept from a limited liability company a distribution of any asset in kind to the extent that the percentage of the asset distributed to the member exceeds the percentage in which the member shares in distributions from the limited liability company.

[4] Louisiana Revised Statute 12:1340, entitled, "Certificate of dissolution; assets omitted from liquidation; post-dissolution proceedings," provides at Subsection (D):

> Any movable or immovable property inadvertently or otherwise omitted from the liquidation shall vest in the members conducting the liquidation or liquidator, for the benefit of the persons entitled thereto, and be distributed accordingly.

8

(1)　Notice of authorization of the dissolution, stating that the limited liability company is to be liquidated out of court and giving the name and post office address of each liquidator, has been published at least once in a newspaper of general circulation in the parish in which the limited liability company's registered office is located, and a copy of such notice, with the affidavit of the publisher of the newspaper to the fact of such publication attached, has been filed with the secretary of state.

(2)　Articles of dissolution have been filed with the secretary of state in accordance with R.S. 12:1339.

B.　However, *any court of competent jurisdiction may wind up the limited liability company's affairs on application of any member or his legal representative or assignee or of any liquidator.*

The authority to appoint a liquidator is also given to the court under La.R.S. 12:1340(E).[5]

Here, the trial judge stated in his judgment that he was appointing Mr. Ford to serve as liquidator with all of the authority granted to him under La.R.S. 12:145(C). This statute is found in Louisiana's Business Corporation Law, but it is nevertheless applicable. "All limited liability companies, regardless of date of organization, shall have the powers, rights, and privileges provided for a corporation organized under the Business Corporation Law (R.S. 12:1 et seq.), and provided for a partnership organized under Title XI of Book III of the Louisiana Civil Code." La.R.S. 12:1303. The trial court's judgment further stated that the liquidator would be subject to the court's supervision, *and that any party could seek relief from the trial court for any decisions made by the liquidator.* We find no error in the trial court's

---

[5]Louisiana Revised Statute 12:1340, entitled, "Certificate of dissolution; assets omitted from liquidation; post-dissolution proceedings," provides at Subsection (E):

Following cessation of the separate existence, the members conducting the liquidation or liquidator shall still have power to take all action required to preserve the interests of the limited liability company, its creditors, and members. The court shall have power, on application by any interested party, to appoint, ex parte or on such notice as the court may order, a liquidator or new liquidator for any proper purpose in case of the death, disability, or unwillingness to serve of the last previous liquidator or last member.

9

appointment of a liquidator, subject to the trial court's supervision and the liquidator's adherence to the Limited Liability Company Law, La.R.S. 12:1301, et seq, and the findings expressed in this opinion.

With regard to the final distribution, the trial court found that the proceeds from the sale of the land should be distributed under La.R.S. 12:1337,[6] first to return the capital investment to each member, and then to distribute the remainder of the proceeds to each member based upon each member's interest in the LLC. This is correct, though the membership interests in this case are not yet established in the record of this appeal.

V.

## CONCLUSION

Based upon the foregoing, we affirm summary judgment based upon judicial dissolution under La.R.S. 12:1335, and we affirm the appointment of a liquidator subject to the court's supervision and the Limited Liability Company Law at La.R.S. 12:1301, et seq.

Costs are assessed against Tommy Pentecost and David L. Gaspard, Jr.

**AFFIRMED.**

---

[6] La.R.S. 12:1337, entitled, "Distribution of assets," provides in pertinent part:

> A. Upon the winding up of a limited liability company, any assets remaining after paying or adequately providing for the payment of all debts and liabilities of the limited liability company, including all costs and expenses of the liquidation and any and all contingent liabilities of which the members or liquidator has knowledge, shall be distributed as follows:

> . . . .

> (2) Except as provided in the articles of organization or a written Operating Agreement, to members and former members, first, for the return of their capital contributions, and secondly, respecting their membership interests, in the proportions in which the members share in distributions.

10