James H.Q. Davis Tr. v. JHD Props., LLC, 2022 NCBC 80.

STATE OF NORTH CAROLINA

WAKE COUNTY

JAMES H. Q. DAVIS TRUST and
WILLIAM R. Q. DAVIS TRUST,

          Plaintiffs,

v.

JHD PROPERTIES, LLC, BERRY
HILL PROPERTIES, LLC, and
CHARLES B. Q. DAVIS TRUST,

          Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
22 CVS 8617

**ORDER AND OPINION ON
DEFENDANT CHARLES B. Q. DAVIS
TRUST'S MOTION TO DISMISS**

1.    **THIS MATTER** is before the Court upon Defendant Intervenor Charles B. Q. Davis Trust's (the "Charles Trust" or "Defendant") Motion to Dismiss Pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure (the "Motion"). (ECF No. 20.)

2.    After considering the Motion, the parties' briefs in support of and in opposition to the Motion, the relevant pleadings, and the arguments of counsel at the hearing held on the Motion, the Court **DENIES** the Motion.

> *Everett Gaskins Hancock LLP, by Ed Gaskins and Katherine A. King, for Plaintiffs James H. Q. Davis Trust and William R. Q. Davis Trust.*
>
> *Meynardie & Nanney, PLLC, by Joseph H. Nanney, for Defendant Charles B. Q. Davis Trust.*
>
> *No counsel appeared for Defendants JHD Properties, LLC and Berry Hill Properties, LLC.*

Bledsoe, Chief Judge.

I.

FACTUAL AND PROCEDURAL BACKGROUND

A.    Factual Background

3.    The Court does not make findings of fact on a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure (the "Rule(s)"). Rather, the Court recites the allegations asserted and documents referenced in Plaintiffs' Complaint that are relevant to the Court's determination of the Motion.

4.    This action arises from disagreements over estate planning vehicles established by James H. Davis, M.D. ("Dr. Davis"). In 2001 and 2002, Dr. Davis set up two limited liability companies, JHD Properties LLC ("JHD") and Berry Hill Properties LLC ("Berry Hill") (together, the "LLCs").[1] Dr. Davis also established four trusts, one for each of his sons, James H. Q. Davis ("Jim"), William R. Q. Davis ("Tad"), Jonathon O. Q. Davis ("Jon"), and Charles B. Q. Davis ("Charles") (collectively, the "Davis Sons").[2] Each son was the sole beneficiary of the trust bearing his name.[3] Thus, Jim was the sole beneficiary of Plaintiff James H. Q. Davis Trust (the "Jim Trust"), Charles was the sole beneficiary of the Charles Trust, and so on.[4] The four trusts are the only members of the LLCs, and each trust holds an equal,

---

[1] (Compl. ¶ 13, ECF No. 3.)

[2] (Compl. ¶¶ 5–13.)

[3] (Compl. ¶¶ 5–13.)

[4] (Compl. ¶¶ 5–13.)

25% equity interest in each LLC.[5]  Only two of the sons, however, Charles and Jim, are the managers of each of the LLCs.[6]

5.      The LLCs own four adjacent tracts of land in Wake County, North Carolina, which comprise approximately 68 acres (the "Property").[7]  Except for one abandoned structure, the Property is undeveloped.[8]  The Property therefore produces no income, except from periodic timber sales,[9] the last of which occurred in 2004.[10]  The Property has therefore produced no income in the last 18 years.[11]

6.      Under the LLCs' operating agreements (the "Operating Agreements"), which are substantially identical, neither LLC may take binding action without the consent of "a [m]ajority of the [m]anagers".[12]  Because the LLCs have two managers, this provision in practice requires unanimous agreement between Charles and Jim to take binding action.

---

[5] (Compl. ¶ 5.)

[6] (Compl. ¶ 16.)

[7] (Compl. ¶ 17.)

[8] (Compl. ¶18.)

[9] (Compl. ¶ 18.)

[10] (Compl. ¶ 18.)

[11] (*See* Compl. ¶ 18.)

[12] (Compl. Ex. 1, Manager-Managed Operating Agreement JHD Properties, LLC art. 3.1; Compl. Ex. 2, Manager-Managed Operating Agreement Berry Hill Properties, LLC art 3.1.) Exhibits 1 and 2 to the Complaint shall together be referred to as the "Operating Agreements".)

7.     Beginning in early 2020, the Davis Sons have disagreed on the proper management of the LLCs and the Property.[13]  Jim, Tad, and sometimes Jon wish to sell the Property, while Charles wishes to develop it.[14]  The Davis Sons have attempted to negotiate with each other and with outside purchasers to sell the Property, to no avail.[15]  Charles offered to purchase the Property himself in April 2022, but Jim refused Charles's offer.[16]  In addition, an external property development company showed interest in purchasing the Property in May 2022 for $8.5 million, but Charles exercised his authority as a manager of the LLCs to prevent negotiations with the development company until the company's letter of intent lapsed.[17]  Thus, the Property is not generating any active income through timber harvesting, and any passive appreciation in its value cannot be realized through development or sale due to deadlock between the managers.

B.    Procedural History

8.     Plaintiffs Jim Trust and William R. Q. Davis Trust (together, the "Plaintiffs") filed this action against JHD and Berry Hill on 12 July 2022, seeking judicial dissolution of the LLCs under N.C.G.S. § 57D-6-02(2)(i).[18]  Plaintiffs allege

---

[13] (Compl. ¶ 21.)

[14] (Compl. ¶ 22.)

[15] (*See* Compl. ¶¶ 22–27.)

[16] (*See* Compl. ¶¶ 22–23.)

[17] (*See* Compl. ¶¶ 24–27.)

[18] The Jonathan O.Q. Davis Trust (the "Jon Trust") is not a party to this action, and no party has sought to join the Jon Trust through Rules 19, 20, or otherwise.  Mindful of the necessary joinder rules of Rule 19, the Court has considered and now concludes that the Jon Trust is

that disagreement between Jim and Charles concerning the use of the Property has rendered it "impossible and impracticable" to conduct the business of the LLCs, and that the LLCs should therefore be judicially dissolved.[19]

9. The case was designated as a mandatory complex business case under N.C.G.S. § 7A-45.4(a)(1) and assigned to the undersigned on 15 July 2022.[20]

10. The Charles Trust filed an unopposed Motion to Intervene in this action with the Wake County Clerk of Superior Court on 11 August 2022,[21] which it amended and re-filed on the Business Court docket on 18 August 2022.[22] The Court granted the motion on 19 August 2022.[23] Since that time, Plaintiffs and the Charles Trust have been the active parties in this litigation. The LLCs have not retained counsel and thus have not appeared at any time in this litigation.[24]

---

not a necessary party to this dissolution action, as either a plaintiff or a defendant. *See* N.C.G.S. § 57D-6-03(a) (providing that a dissolution action must be brought solely against the LLC itself, and that a plaintiff may not join an LLC member unless relief is sought against the member individually); N.C.G.S. § 57D-6-02(2)(i) (providing that a dissolution action may be brought by "*a* member.") (emphasis added).

[19] (Compl. ¶¶ 28–32.)

[20] (Designation Order, ECF No. 1; Assignment Order, ECF No. 2.)

[21] (Mot. Intervene, ECF No. 10.)

[22] (Am. Mot. Intervene, ECF No. 7.)

[23] (Order Granting Am. Mot. Intervene, ECF No. 11.)

[24] The Court and the parties agree that Jim and Charles, as the LLCs' managers, are the primary disputants in this action. (*See* Am. Mot. Intervene ¶¶ 5–8.) Plaintiffs bring this action to remedy alleged deadlock in the affairs of the LLCs brought about by disagreement between Charles and Jim, which, among other things, has prevented the LLCs from agreeing to retain counsel to defend this litigation. Without counsel, the LLCs cannot appear. *See LexisNexis, Div. of Reed Elsevier, Inc. v. Travishan Corp.*, 155 N.C. App. 205, 209 (2002) (holding that, subject to limited exceptions not applicable here, "in North Carolina a [business

11. The Charles Trust filed the Motion on 18 October 2022.[25] On 3 November 2022, the Court entered an Order Staying Discovery until the Court rules on the Motion.[26] The Court held a hearing on the Motion on 22 November 2022, at which Plaintiffs and Defendant were represented by counsel (the "Hearing"). The Motion is fully briefed and now ripe for decision.

## II.

## LEGAL STANDARD

12. When deciding whether to dismiss for failure to state a claim under Rule 12(b)(6), the Court considers "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (quoting *CommScope Credit Union v. Butler & Burke, LLP*, 369 N.C. 48, 51 (2016)).[27]

---

entity] must be represented by a duly admitted and licensed attorney-at-law and cannot proceed *pro se*[.]").

[25] (Intervenor's Mot. Dismiss Pursuant Rule 12(b)(6) N.C. R. Civ. Proc., ECF No. 20.)

[26] (Order Staying Discovery, ECF No. 24.)

[27] The Court notes that Defendant has supported its Motion with Charles's affidavit. (*See* ECF No. 22.) Defendant asserts that the affidavit is tendered, "not because it is necessary to meet [Defendant's] Rule 12(b)(6) standard, but because [Defendant] believes the additional background information should be presented to the Court in the interest of judicial economy," contending that Plaintiffs cannot successfully re-plead their claim and thus that this action should be dismissed with prejudice. (Charles B.Q. Davis Trust's Br. Supp. Mot. Dismiss 6 n.1 [hereinafter Def.'s Br. Supp.], ECF No. 21.).) As the Court made clear at the Hearing, however, North Carolina law does not permit the Court to consider the affidavit without converting the motion to one for summary judgment. *See, e.g.*, *Kinston Med. Specialists, P.A. v. Bundle*, 2015 NCBC LEXIS 48, at *5 (N.C. Super. Ct. May 7, 2015) ("the Court cannot consider [affidavits] in deciding a motion under Rule 12(b)(6) [.]"). Since both parties agreed at the Hearing that the Motion should be considered and determined pursuant to the standards applicable to motions under Rule 12(b)(6) and not under Rule 56, the Court

13. "[D]ismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.' " *Id.* at 615 (quoting *Wood v. Guilford Cnty.*, 355 N.C. 161, 166 (2002)).

14. Under Rule 12(b)(6), "the trial court is to construe the pleading liberally and in the light most favorable to the plaintiff, taking as true and admitted all well-pleaded factual allegations contained within the complaint." *Donovan v. Fiumara*, 114 N.C. App. 524, 526 (1994) (cleaned up). The Court need not, however, accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. HHS, Div. of Facility Servs.*, 174 N.C. App. 266, 274 (2005) (cleaned up).

## III.

## ANALYSIS

15. Plaintiffs' sole claim in this action is that operating the LLCs has become impracticable within the meaning of N.C.G.S. § 57D-6-02(2)(i) and that the LLCs should therefore be judicially dissolved.[28] Defendant moves to dismiss, contending that Plaintiffs have failed to allege facts from which a trial court could order judicial dissolution.

---

declines to consider Charles's affidavit, or the portions of Defendant's supporting brief that rely upon the affidavit, in resolving Defendant's Motion.

[28] (Compl. ¶¶ 28–32.)

16.     At the outset, the Court rejects Defendant's argument that Plaintiffs' claim should be dismissed because Plaintiffs did not state the "business" of the LLCs in explicit terms in the Complaint. Defendant notes that N.C.G.S. § 57D-6-02(2) permits dissolution by an LLC member only where "it is not practicable to conduct the LLC[s'] *business* in conformance with the operating agreement and [Chapter 57D]" (emphasis added)[29] and contends that Plaintiffs have failed to allege the LLCs' "business" with requisite specificity.

17.     North Carolina, however, employs a forgiving notice pleading standard in most instances under Rule 8, and Rule 12(b)6) requires the Court to treat Plaintiffs' factual allegations as true and draw all reasonable inferences in Plaintiffs' favor. *See, e.g., Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 559 (2009); *Quidore v. All. Plastics, LLC*, 2020 NCBC LEXIS 140, at *8 (N.C. Super Ct. Dec. 3, 2020). Viewing the complaint in this light, Plaintiffs have alleged that the LLCs' business purpose is to maximize the return on the LLCs' only asset, the Property, which the LLCs have

---

[29] (Def.'s Br. Supp. 20–21.) N.C.G.S. § 57D-6-02(2) states:

> The superior court may dissolve an LLC in a proceeding brought by either of the following:
>
> (2) A member, if it is established that (i) it is not practicable to conduct the LLC's business in conformance with the operating agreement and this Chapter or (ii) liquidation of the LLC is necessary to protect the rights and interests of the member.

This Court has noted that "the first prong is conjunctive, requiring the member to show impracticability under both the operating agreement and Chapter 57D to permit dissolution under this subsection." *Norris v. Greymont Dev., LLC*, 2022 NCBC LEXIS 7, at *8 (N.C. Super. Ct. Jan. 31, 2022).

sought to accomplish in two ways: through timber sales until 2004,[30] and by holding the Property for sale or development since the LLCs were created, which has been the sole activity since 2004.[31] Even if the Court assumes that Plaintiffs must specifically plead the LLCs' "business" under section 57D-6-02(2) for purposes of Rule 12(b)(6), the Court concludes that Plaintiffs have met that burden here. *See Kinsley v. Ace Speedway Racing, Ltd.*, 2022-NCCOA-524 ¶ 34 ("[w]e have held that a party need not use magic words to plead the substantive elements of its claim.").

18. The Court next turns to whether Plaintiffs have adequately alleged facts showing that "it is not practicable to conduct the LLC[s'] business in conformance with the operating agreement and [Chapter 57D]" as required under section 57D-6-02(2)(i). Plaintiffs contend that they have; Defendant contends Plaintiffs have not.

19. The goal of statutory interpretation in North Carolina is to determine the statute's legislatively intended meaning, as evidenced by the statute's text, goal, and spirit. *State v. Rankin*, 371 N.C. 885, 889 (2018); *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs*, 299 N.C. 620, 629 (1980). A court will not engage in judicial interpretation of a textually unambiguous statute, but "[i]f the language is ambiguous or unclear, the reviewing court must construe the statute in an attempt not to defeat or impair the object of the statute if that can reasonably be done without doing violence to the legislative language." *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 518 (2004) (cleaned up).

---

[30] (Compl. ¶ 18.)

[31] (Compl. ¶¶ 17–27.)

20. The term "practicable" is not defined in section 57D-6-02, and our appellate courts have offered little guidance as to the term's meaning. Defendant argues that the few North Carolina cases to have interpreted section 57D-6-02(2)(i) demonstrate that judicial dissolution is an extreme remedy, granted rarely and only when there is "proof of substantial mismanagement or financial loss[,]" citing *Brady v. Vlaanderen*, 2017 NCBC LEXIS 61, at *33 (N.C. Super Ct. July 19, 2017), when the "parties' pleaded disagreement reflects a level of discord that pervades every aspect of the parties' management of [the LLC,]" citing *Norris*, 2022 NCBC LEXIS 7, at *6–8 (cleaned up),[32] or when there exists a high degree of distrust among the deadlocked parties preventing them from ever working together, citing *Chisum v. Campagna*, 376 N.C. 680, 2021-NCSC-7, ¶ 64.[33]

21. Defendant argues that Plaintiffs have failed to plead the level of dysfunction required by these cases or that the managers' "disagreement makes it [impracticable] to continue 'all or even substantially all' of the LLCs' current business operations[,]" *Norris*, 2022 NCBC LEXIS 7, *6–8, requiring dismissal.[34]

22. The Court disagrees, as each of these cases arose in a different procedural posture or is otherwise readily distinguishable from this action.

23. In *Norris*, the plaintiff pleaded that while a pertinent disagreement between the managers existed, the parties operated the LLC at issue "cooperative[ly.]" *Norris*,

---

[32] (*See* Def.'s Br. Supp. 20, 22.)

[33] Defendant cited to *Chisum* for the first time at the Hearing.

[34] (Def.'s Br. Supp. 22.)

2022 NCBC LEXIS 7, at *11. Consequently, this Court expressly premised its dismissal of the plaintiff's judicial dissolution claim on this fact, "conclud[ing] that the parties' *pleaded cooperation and agreement* in managing . . . [defendant's] ongoing business operations" demonstrated that judicial dissolution would be inappropriate. *Id.* (emphasis added).

24.   There are no similarly self-defeating allegations made here. While Plaintiffs allege that timber sales proceeded "from time to time" until 2004,[35] Plaintiffs have not alleged that the LLCs are currently used for timber production or sale or that the LLCs intend to engage in timber harvesting or sale in the future. At the same time, Plaintiffs have alleged that the Property is undeveloped and "suitable for residential development" and that Charles and Jim's deadlock has prevented the sale or development of the Property.[36]   Therefore, unlike in *Norris*, Plaintiffs have not pleaded current "cooperation and agreement in managing . . . [defendant's] ongoing business operations[,]" and Defendant's reliance on *Norris* is therefore inapposite.

25.   In *Chisum*, the trial court ordered judicial dissolution after trial. *Chisum*, 2021-NCSC-7, ¶ 64. The Supreme Court affirmed this order and remedy, after making specific note of the trial court's observations of the extraordinary level of mutual hostility and distrust between the LLC's managers. *See id.* at ¶¶ 64–65. The Supreme Court quoted in particular the trial court's belief that the parties so distrusted each other that "these parties could not ever again be associated with one

---

[35] (Compl. ¶ 18.)

[36] (*See* Compl. ¶¶ 21–27.)

another in a jointly owned business[.]" *Id.* at ¶ 64. While Plaintiffs have not pleaded such a high level of distrust between Jim and Charles here, *Chisum* does not require that Plaintiffs must do so to sustain their dissolution claim. *Chisum* simply notes that the trial court's observations "provide[d] ample support" for judicial dissolution, *id.*, not that such allegations are necessary to survive Rule 12(b)(6) dismissal.

26. Finally, in *Brady*, the trial court considered a dissolution claim on summary judgment based on the presentation of evidence, not at the Rule 12(b)(6) stage based on the complaint, and, in any event, Plaintiffs have alleged that Charles's objections and the ongoing deadlock prevented a sale of the Property for $8.5 million,[37] sufficiently stating a "financial loss" to Plaintiffs under *Brady* for purposes of Rule 12(b)(6).

27. Having found these North Carolina cases unpersuasive and no others from our appellate courts helpfully construing section 57D-6-02(2)(i)'s use of the term "practicable," the Court next turns to other tools of statutory construction to ascertain the term's meaning.

28. The Court begins with the standard, dictionary definition of "practicable." *See Morris Commc'ns Corp. v. City of Bessemer,* 356 N.C. 152, 158 (2011) ("To ascertain the ordinary meaning of undefined and ambiguous terms, courts may appropriately consult dictionaries.") Black's Law Dictionary defines "practicable" as "*reasonably* capable of being accomplished; *feasible* in a *particular* situation." *Practicable*, Black's Law Dictionary (11th ed. 2019) (emphasis added). Merriam-

---

[37] (Compl. ¶¶ 24–27.)

Webster and Dictionary.com offer nearly identical definitions.[38] Based on these persuasive sources, the Court concludes that "practicable" is synonymous with "feasible" and does not mean simply "possible." Indeed, the Court notes that something may be possible yet not *feasible* without extra time or resources in a particular circumstance. Following this same logic, the Court also concludes that "not practicable" is likewise synonymous with "unfeasible" and does not mean "impossible."

29. Courts from other jurisdictions agree. *See, e.g.*, *Gagne v. Gagne*, 338 P.3d 1152, 1160 (Colo. App. 2014) (concluding that Colorado's "not practicable" standard for judicial dissolution required that the LLC be "unable to pursue the purposes for which the company was formed in a reasonable, sensible, and feasible manner"); *Unbridled Holdings, LLC v. Carter*, 607 S.W.3d 188, 197 (Ky. Ct. App. 2020) (noting that if the Kentucky legislature had desired a higher standard for Kentucky's dissolution statute, "it would have used the term 'impossible' instead of 'not reasonably practicable'" and noting that "almost all the outside authorities" permit dissolution under an impracticability standard); *In re 1545 Ocean Ave., LLC*, 893 N.Y.S.2d 590, 597–98 (N.Y. App. Div. 2010) (ordering dissolution under New York's "not reasonably practicable" standard where "continuing the entity [was] financially unfeasible"); *PC Tower Ctr., Inc. v. Tower Ctr. Dev. Assoc. LP*, No. 10788, 1989 Del.

---

[38] *See Practicable*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/practicable (last visited Dec. 7, 2022) ("Capable of being put into practice or of being done or accomplished: Feasible"); *Practicable*, Dictionary.com, https://www.dictionary.com/browse/practicable (last visited Dec. 7, 2022) ("capable of being done, effected, or put into practice, with the available means; feasible").

Ch. LEXIS 72, at *16 (Del. Ch. June 8, 1989) (concluding that Delaware's "not reasonably practicable" standard is "one of reasonable practicability, not impossibility"); *see also Taki v Hami*, No. 219307, 2001 Mich. App. LEXIS 777, at *8 (Mich. Ct. App. May 4, 2001) (finding dissolution appropriate under Michigan's "reasonably practicable" standard where a partnership's operations were "not capable of being done logically and in a reasonable, feasible manner").[39]

30.     Accordingly, based on these authorities and because the meaning of the term, in the context it is used in section 57D-06-02(2)(i), is no different than as discussed above, the Court concludes that "not practicable" in section 57D-06-02(2)(i) therefore means "unfeasible" and does not mean "impossible." The Court thus applies this understanding in determining whether Plaintiffs have pleaded facts permitting a factfinder to conclude that "it is not practicable to conduct the LLC[s'] business in conformance with the operating agreement and [Chapter 57D]" under section 57D-6-02(2)(i). Viewing the complaint's allegations in the light most favorable to Plaintiffs, the Court concludes that they have.

31.     The Operating Agreements require Charles and Jim to agree for the LLCs to take action, which they have thus far been unable to do since "at least early 2020."[40]

---

[39] The Court recognizes that most states' LLC dissolution statutes provide for dissolution when it is not "*reasonably* practicable" to operate, while section 57D-6-02(2)(i) provides for dissolution only when it is not "practicable." This is a distinction without a difference, however, for two reasons. First, the word "practicable" itself connotes reasonableness. *See, e.g.*, *Practicable*, Black's Law Dictionary (11th ed. 2019). Second, this Court has previously construed the two standards as identical. *See Battles v. Bywater, LLC*, 2014 NCBC LEXIS 54, at *23–24 (N.C. Super Ct. Oct. 31, 2014).

[40] (*See* Compl. ¶¶ 20–21, 28–30; Operating Agreements arts. 3.1–3.2.)

Plaintiffs have additionally pleaded that they are deadlocked on the use of the Property, there is no mechanism in the Operating Agreements to break the deadlock, the LLCs have not conducted any economically useful activity since 2004,[41] and there is no other way for the LLCs to conduct any business, realize any profit, or dispose of any assets so long as the unbreakable deadlock persists.[42] The Court concludes that these allegations are sufficient to show that it is not practicable to conduct the LLCs' business in conformance with the operating agreements and Chapter 57D.

32. The Court finds support for its conclusion from courts in other jurisdictions. For example, in *Kirksey v. Grohmann*, 2008 SD 76, 754 N.W.2d 825, four sisters formed an LLC to manage land their parents bequeathed them. *Id.* ¶¶ 2–3. Eventually, the sisters reached a two-to-two impasse on how to use or dispose of the land. *Id.* ¶¶ 26–27. Even though, as here, the deadlock did not threaten the LLC's existence or financial vitality, and the LLC could continue to hold the land, the Supreme Court of South Dakota held, under South Dakota's "not reasonably practicable" standard, that the lack of any means to break the deadlock frustrated the business of the LLC and rendered judicial dissolution proper. *Id.*

33. Courts in other states have ordered dissolution on broadly similar facts. *See, e.g.*, *Haley v. Talcott*, 864 A.2d 86, 96, 98 (Del. Ch. 2004) (ordering dissolution under Delaware's "not reasonably practicable" standard where the LLC, while continuing to "technically function[ ]," existed under a "residual, inertial status quo"); *In re Cat*

---

[41] (*See* Compl. ¶¶ 18, 21–27.)

[42] (*See generally* Compl.)

*Island Club, LLC*, 11-1557, pp. 6–7 (La. App. 3 Cir. 5/2/12), 94 So.3d 75, 79–80 (affirming dissolution under Louisiana's "not reasonably practicable" standard where parties were unable "to work toward any goals or reasons for continued association with each other"); *Venture Sales, LLC v. Perkins*, 10-CA-01552-SCT (¶¶ 12–29) (Miss. 2012) (holding that the trial court did not abuse its discretion by granting dissolution under Mississippi's "not reasonably practicable" standard when the LLC "ha[d] existed for more than ten years and ha[d] yet to achieve . . . its stated purpose[ ]").

34.    Accordingly, based on the above and in the absence of any contrary guidance from North Carolina's appellate courts, the Court concludes that Plaintiffs have sufficiently pleaded their claim for judicial dissolution to survive dismissal under Rule 12(b)(6).  Defendant's Motion shall therefore be denied.

IV.

CONCLUSION

35.    **WHEREFORE**, for the foregoing reasons, the Court hereby **DENIES** the Charles Trust's Motion to Dismiss.

**SO ORDERED**, this the 9th day of December, 2022.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge