PRESENT:  All the Justices

THE DUNBAR GROUP, LLC, ET AL.

v.  Record No. 030638   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                    March 5, 2004
ARCHIE F. TIGNOR, ET AL.

        FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Theodore J. Markow, Judge


     In this appeal from a judgment ordering the dissolution of

a limited liability company, the dispositive issue is whether

the evidence was sufficient to support the chancellor's

judgment.

     XpertCTI, LLC (Xpert), is a limited liability company that

provides "computer telephony integration" (CTI) software to

dealers and manufacturers for installation in certain telephone

systems and equipment.  CTI software enables the use of

computers to "interface" with and control telephone systems.

     Xpert was formed in March 2000, by The Dunbar Group, LLC

(Dunbar), and Archie F. Tignor, who each owned a membership

interest of 50 percent in Xpert.  Edward D. Robertson, Jr., a

computer software developer and consultant, was the sole member

and manager of Dunbar.

     Tignor, a commercial telephone and telecommunications

equipment dealer and installer, owned 50 percent of the stock of

X-tel, Inc. (X-tel), a telecommunications sales firm.  Tignor

served as the president of X-tel, which was a dealer in

equipment for Samsung Telecommunications America, Inc. (Samsung), a manufacturer, distributor, and seller of telecommunications equipment.

Dunbar and Tignor executed an "Operating Agreement" for Xpert under which they were the sole managers of Xpert. Dunbar created Xpert's proprietary software, or "source code," and conducted the daily operations of the company. Tignor's main function was to provide Xpert with access to his business contacts in the telecommunications industry, including Samsung.

Xpert's operating agreement provided a procedure for a company member to assert a breach of the agreement by another company member. The agreement specified that if the breach was not timely cured by the defaulting member, the complaining member had the "right to petition a court of competent jurisdiction for dissolution of the Company." The agreement also stated that the "dissolution of a [m]ember or occurrence of any other event that terminates the continued membership of a [m]ember in the Company shall not cause the dissolution of the Company."

In December 2000, Xpert entered into a contract with Samsung to supply Samsung with software-driven security devices called "dongles," which were to be included in all telecommunications systems sold by Samsung. Xpert received about $20,000 per month from the Samsung contract. The Samsung

contract contained a provision specifying the contract's duration:

> This Agreement shall come into force and effect on the date written above [December 5, 2000] and shall remain in full force and effect for consecutive periods of thirty-six (36) months thereafter . . . .  After this time the contract will continue on an annual basis unless terminated by either party giving 90 days notice before the anniversary of the contract date.

Certain disputes arose between Robertson and Tignor over matters primarily related to the management and disbursement of Xpert's assets.  In May 2002, Dunbar's counsel sent a letter to Tignor's counsel stating that it was apparent to Robertson that "his continued working relationship with Mr. Tignor [was] no longer possible."  Dunbar's counsel further stated that "Mr. Robertson is of the opinion that it is in the parties' best interest to sever their ties as fully and quickly as possible."

In September 2002, Dunbar, Xpert, and Robertson, in his capacity as a manager of Xpert, (collectively, Dunbar) filed an amended bill of complaint against Tignor and X-tel requesting, among other things, entry of an order "expelling and dissociating Tignor as a member of Xpert pursuant to Virginia Code § 13.1-1040.1(5)."  Dunbar alleged that Tignor engaged in "numerous acts of misconduct as a member and manager of Xpert," including the commingling of Xpert's funds with the funds of Tignor and "his corporate alter ego, X-tel."

Code § 13.1-1040.1, which provides for a court-ordered expulsion of a member of a limited liability company, states in relevant part:

[A] member is dissociated from a limited liability company upon the occurrence of any of the following events:

. . . .

5. On application by the limited liability company or another member, the member's expulsion by judicial determination because:

a. The member engaged in wrongful conduct that adversely and materially affected the business of the limited liability company;

b. The member willfully or persistently committed a material breach of the articles of organization or an operating agreement; or

c. The member engaged in conduct relating to the business of the limited liability company which makes it not reasonably practicable to carry on the business with the member.

Tignor filed a separate "Application for Judicial Dissolution" against Dunbar and Xpert. Tignor requested, among other things, the dissolution of Xpert under Code § 13.1-1047 on the ground that "it is not reasonably practicable to carry on the business of [Xpert] in conformity with the Articles of Organization and [the] Operating Agreement." Tignor alleged that "serious differences of opinion as to company management have arisen between the members and managers" of Xpert, and that the company was "deadlocked" in its ability to conduct its business affairs, including contracting with customers for goods

4

and services and the "receipt and disbursement of [Xpert's] assets and company funds."

The chancellor consolidated for trial Dunbar's amended bill of complaint and Tignor's application for judicial dissolution. At a hearing, the chancellor received evidence relating to both pleadings.

The evidence showed that Tignor commingled Xpert's funds with X-tel's funds by placing several checks, which were made payable to Xpert, into X-tel's bank account. Tignor provided inaccurate information to Robertson concerning one of those checks, which was made payable to Xpert in the amount of about $47,000. Tignor used the proceeds from that check to pay some of X-tel's expenses and to meet X-tel's payroll, including the payment of Tignor's own salary.

Without informing Robertson, Tignor also authorized a change in the status of Xpert's checking account that prevented checks from being written on the account. When Robertson, who was unaware of the change, wrote a check payable to one of Xpert's vendors, the check "bounced."

Although Dunbar had been renting office space from X-tel, Tignor evicted Robertson from X-tel's premises. Tignor also restricted Robertson's access to various testing equipment located in X-tel's offices, reducing Robertson's ability to test Xpert's products. Robertson needed access to this equipment to

5

ensure the quality of Xpert's products before they were delivered to Xpert's customers. Due to Robertson's restricted ability to test Xpert's products, Xpert's customers did not receive their orders in a timely manner and products were sent to customers "in less than quality condition."

Tignor also terminated Robertson's e-mail account with Xpert without giving him prior notice. This sudden termination of Robertson's e-mail account created "a lot of confusion" among Xpert's customers, giving the appearance that Xpert had "gone out of business."

In December 2002, the chancellor entered an order in which he found that Tignor commingled Xpert's funds with his own funds and the funds of X-tel. The chancellor also concluded that Tignor's actions had been contrary to Xpert's best interests and had "adversely affected Xpert's ability to carry on its business." The chancellor further determined that Tignor had acted "in violation of" subparagraph five of Code § 13.1-1040.1.

The chancellor ordered that Tignor be "immediately expelled as an active member of Xpert" and that Robertson "shall continue to operate Xpert" and provide to Tignor a monthly accounting of Xpert's finances. The chancellor also ordered:

> Xpert . . . shall continue the arrangement pursuant to
> this order until its contract with [Samsung] expires
> or otherwise terminates, including any extensions.
> Following the fulfillment or non-renewal of the
> [Samsung] contract, the court orders that Xpert . . .

6

be dissolved and its assets distributed pursuant to the Virginia Code and the operating agreement of Xpert.

Dunbar appeals.

Dunbar does not challenge that part of the chancellor's order expelling Tignor as a member of Xpert, but attacks only the portion of the order providing for the dissolution of Xpert. Dunbar argues that the evidence is insufficient to support the dissolution of Xpert because the evidence did not satisfy the standard required by Code § 13.1-1047 for the judicial dissolution of a limited liability company. In support of this argument, Dunbar primarily asserts that the record fails to show that after the expulsion of Tignor as a member of Xpert, it would not be reasonably practicable to carry on Xpert's business.[*]

In resolving Dunbar's claim, we first observe that an established standard of review governs our inquiry. Because the chancellor heard the evidence ore tenus, his decree is entitled to the same weight as a jury verdict. Shooting Point, L.L.C. v. Wescoat, 265 Va. 256, 264, 576 S.E.2d 497, 501 (2003); Chesterfield Meadows Shopping Ctr. Assocs., L.P. v. Smith, 264 Va. 350, 355, 568 S.E.2d 676, 679 (2002). Therefore, on appeal, we will not set aside the chancellor's findings unless they are plainly wrong or without evidence to support them. Shooting

7

Point, L.L.C., 265 Va. at 264, 576 S.E.2d at 501; Tauber v. Commonwealth, 263 Va. 520, 526, 562 S.E.2d 118, 120 (2002).

The chancellor resolved the dissolution issue in Tignor's favor. Thus, we consider the evidence relating to the dissolution determination in the light most favorable to Tignor. See Barner v. Chappell, 266 Va. 277, 283, 585 S.E.2d 590, 594 (2003); Jenkins v. Bay House Assocs., L.P., 266 Va. 39, 41, 581 S.E.2d 510, 511 (2003).

This appeal presents our first opportunity to consider the statutory standard provided in Code § 13.1-1047 for the judicial dissolution of a limited liability company. The statute states that

> [o]n application by or for a member, the circuit court of the locality in which the registered office of the limited liability company is located may decree dissolution of a limited liability company if it is not reasonably practicable to carry on the business in conformity with the articles of organization and any operating agreement.

Id.

Because this statutory language is plain and unambiguous, we apply the plain meaning of that language. See Woods v. Mendez, 265 Va. 68, 74-75, 574 S.E.2d 263, 266 (2003); Industrial Dev. Auth. v. Board of Supervisors, 263 Va. 349, 353, 559 S.E.2d 621, 623 (2002). The statutory standard set by the General Assembly for dissolution of a limited liability company

---

* Tignor did not file a brief in this appeal.

8

is a strict one, reflecting legislative deference to the parties' contractual agreement to form and operate a limited liability company.  Only when a circuit court concludes that present circumstances show that it is not reasonably practicable to carry on the company's business in accord with its articles of organization and any operating agreement, may the court order a dissolution of the company.

The record here, however, does not show that the chancellor evaluated the evidence in light of the fact that Tignor was being expelled as a member and manager of Xpert.  Although Tignor's actions in those capacities had created numerous problems in the operation of Xpert, his expulsion as a member changed his role from one of an active participant in the management of Xpert to the more passive role of an investor in the company.  The record fails to show that after this change in the daily management of Xpert, it would not be reasonably practicable for Xpert to carry on its business pursuant to its operating authority.

Moreover, we observe that the terms of the chancellor's dissolution order refute a conclusion that dissolution was appropriate under the statutory standard of Code § 13.1-1047. While the chancellor concluded that judicial dissolution of Xpert was warranted, he nevertheless ordered that Xpert continue operating as a limited liability company for as long as the

9

Samsung contract remained in effect.  This provision in the chancellor's order indicates that he concluded that Tignor's expulsion from Xpert would make it reasonably practicable for Xpert to continue to operate for an extended period of time.

Accordingly, we hold that the evidence does not support that part of the chancellor's order providing for the dissolution of Xpert.  Further, because the evidence is insufficient to support such a judicial dissolution, we do not reach Dunbar's additional argument that the chancellor erred under Code § 13.1-1047 in ordering that Xpert be dissolved at an uncertain, future date.

For these reasons, we will affirm that part of the chancellor's judgment expelling Tignor as a member of Xpert, reverse that part of the judgment ordering the dissolution of Xpert, and enter final judgment.

<u>Affirmed in part</u>,
<u>reversed in part</u>,
<u>and final judgment</u>.