COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, AtLee and Chaney
Argued at Fredericksburg, Virginia


TICONDEROGA FARMS, LLC, ET AL.

MEMORANDUM OPINION[*] BY
v.      Record No. 1590-22-4          JUDGE RICHARD Y. ATLEE, JR.
JUNE 11, 2024

ALEXANDRA B. KNOP, INDIVIDUALLY AND IN
 HER CAPACITY AS TRUSTEE OF THE
 EVERGREEN TRUST, ET AL.


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Stephen E. Sincavage, Judge

Virginia Whitner Hoptman (Hunter Winstead; Redmon, Peyton &
Braswell LLP; Gilbert LLP, on briefs), for appellants.

Michael W. Robinson (Nicholas M. DePalma; Kevin W. Weigand;
Venable LLP, on brief), for appellees.


This appeal concerns the judicial dissolution of Ticonderoga Farms, LLC, one chapter in a
compendium of conflict and acrimonious litigation over the management of the business.[1]  Peter
J. Knop ("father") was the majority member of Ticonderoga Farms, and his children Alexandra
B. Knop and William J.W. Knop[2] (collectively, the "siblings" or "children") were minority
members.  In this matter, father contests the circuit court's ruling granting the Knop siblings'
motion for dissolution of Ticonderoga Farms, arguing that doing so was a misapplication of

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] *See, e.g.*, *Knop v. Knop* (*Knop I*), 297 Va. 553, 556 (2019) (concluding that "although
[father] intended to make gifts of stock to his children for estate planning purposes[,] those gifts
were never effect[ed] . . . because they were never delivered to the children in the manner
required by law").

[2] Alexandra and William are also trustees of The Evergreen Trust, which held a third
minority share in Ticonderoga Farms on behalf of their brother, Peter R.Q. Knop.

Code § 13.1-1047(A), which sets out parameters for judicial dissolution of an LLC. Instead, he argues, the circuit court ought to have granted his motion for dissociation of his children's minority shares in the business pursuant to Code § 13.1-1040.1(5). He also argues that the circuit court erred in denying his motions to strike and for summary judgment, alleging that doing so "failed to give proper effect to prior court rulings." For the following reasons, we disagree and affirm.

## I. BACKGROUND

This case arose from father demanding a "capital call," or a mandatory pro rata contribution of capital, from all the members of the LLC. Father holds a 72.76% share of the LLC, and his three adult children each own 9.08%. The Knop siblings filed a complaint requesting: (1) a declaratory judgment that father lacked authority to demand a capital call from the siblings, and (2) an order compelling father to provide the siblings access to Ticonderoga Farms's financial records. In response, father filed an answer and counterclaim requesting declaratory judgment that he had the authority to make a capital call and requesting judicial dissociation of the siblings from the LLC under Code § 13.1-1040.1(5). The siblings then filed an amended complaint that requested total judicial dissolution of Ticonderoga Farms under Code § 13.1-1047.

The circuit court rejected father's arguments, holding that "[t]here was no authority for [father] to make a valid and enforceable capital call on the defendants to contribute to the LLC" under Code § 13.1-1027(E). The circuit court also rejected father's argument that the holding in the prior case dictated a finding that the operating agreement was valid. It found that the prior case involved different claims and the issue was not litigated. It also noted, while father had not raised any collateral estoppel claim, that such a claim would also have failed.

The circuit court also denied father's motion to dissociate the Knop siblings' minority shares in the business. First, it noted that because the purported operating agreement father sought to enforce was not valid, the siblings' noncompliance with its provisions regarding capital contributions could not serve as a basis for disassociation. It found that, contrary to father's contentions, they had acted reasonably when asking to inspect the business's books and records and engaging in litigation in order to do so. The fact that they initiated litigation was not, in itself, grounds for disassociation.

It then considered the Knop siblings' motions for dissolution and entry of a declaratory judgment. The circuit court noted that both sides appeared to agree that the LLC was not able to function in a "reasonably practicable" manner, even if the parties disagreed on the cause of that dysfunction. It agreed with that assessment and therefore granted the motions and dissolved the LLC under Code § 13.1-1047.

## II. ANALYSIS

### A. *Standards of Review*

Father's claims involve both statutory interpretation and review of the circuit court's factual findings. Statutory interpretation is a question of law we review de novo. *Robinson v. Commonwealth*, 70 Va. App. 509, 513 (2019) (en banc). When interpreting a statute, "our primary objective is to ascertain and give effect to the legislative intent, which 'is initially found in the words of the statute itself.'" *Chaffins v. Atl. Coast Pipeline, LLC*, 293 Va. 564, 568 (2017) (quoting *Crown Cent. Petroleum Corp. v. Hill*, 254 Va. 88, 91 (1997)). The proper course is "to 'search out and follow the true intent of the legislature, and to adopt that sense of the words which harmonizes best with the context[] and promotes in the fullest manner the apparent policy and objects of the legislature.'" *Smith v. Commonwealth*, 66 Va. App. 382, 389 (2016) (quoting *Marshall v. Commonwealth*, 58 Va. App. 210, 215 (2011)). Additionally, "the plain, obvious,

and rational meaning of a statute is always to be preferred to any curious, narrow, or strained construction." *Id.* at 388 (quoting *Williams v. Commonwealth*, 57 Va. App. 341, 351 (2010)).

Although it involves the application of statutory factors, both the decision to order the dissolution of an LLC and the decision to deny a motion to disassociate LLC members are factual determinations and "an established standard of review governs our inquiry." *Dunbar Grp., LLC v. Tignor*, 267 Va. 361, 366 (2004). The circuit court's judgment is entitled to the same weight as a jury verdict, and we will not set its findings aside "unless they are plainly wrong or without evidence to support them." *Id.* at 366-67; *see also Russell Realty Assocs. v. Russell*, 283 Va. 797, 806 (2012). Because the Knop siblings prevailed in the circuit court, "we consider the evidence relating to the dissolution determination in the light most favorable to" them. *Dunbar*, 267 Va. at 367.

B. *Validity of the Draft Operating Agreement*

The bulk of father's arguments presume, and indeed require, that the operating agreement he drafted was valid and in effect at the time he demanded a capital contribution from his children. In part, this is because both judicial remedies of disassociation and dissolution require a court to consider an entity's articles of organization and/or operating agreement. Ticonderoga Farms's articles of organization consist of a single page, a simple "fill in the blanks" form, identifying the company name, addresses, and the attorney serving as the registered agent. Although it is accompanied by articles of entity conversion, these governed only the process of converting the corporation to an LLC, which has already occurred and has no bearing on the ongoing operations of the LLC after conversion. *See Knop v. Knop (Knop I)*, 297 Va. 553, 558 (2019). The articles of organization contain no other provisions concerning the governance of the LLC. Accordingly, the management and operation of Ticonderoga Farms is governed by statute.

### 1. Adoption of an LLC Operating Agreement by Statute

Under the Virginia Limited Liability Company Act, "[a]n operating agreement must initially be agreed to by *all of the members*." Code § 13.1-1023(B)(1) (emphasis added). Without an existing operating agreement, and with the LLC's articles of organization being silent on any process to vote to adopt or amend one, the statute expressly requires every member of the LLC—which, here, includes the Knop siblings—to have agreed to adopt the proposed operating agreement. Although "[t]he operating agreement Father *drafted* for the LLC gave him total control of the company," *Knop I*, 297 Va. at 558 (emphasis added), at no point did any of the Knop children vote to adopt this operating agreement. Accordingly, under Code § 13.1-1023(B), father's draft operating agreement never went into effect and Ticonderoga Farms had no effective operating agreement.

### 2. "[G]iv[ing] proper effect to prior court rulings"

In an attempt to get around this straightforward construction and application of Code § 13.1-1023(B), father argues that the trial court and Supreme Court rulings in *Knop I* required the circuit court in this matter to treat the document he claims is Ticonderoga Farms's operating agreement as valid and in effect. Essentially, he reasons, because the courts in *Knop I* did not expressly rule that the operating agreement was invalid, they therefore found that it was valid, and that finding is binding on the circuit court in the present litigation. The circuit court rejected this argument, which father claims is error.

Assuming without deciding that father's arguments are preserved,[3] we find his arguments fail on the merits. Father bases his argument on brief on the principle of res judicata. Under that

---

[3] Father's rationale for this argument varies between what he argued in the circuit court, what he initially included in his assignment of error to this Court, and what he ultimately assigns error to and argues on brief. In the circuit court, he argued that the operating agreement was valid and enforceable under theories of res judicata and "law of the case." He raised collateral estoppel in responsive pleadings.

principle, "[a] valid, personal judgment on the merits in favor of defendant bars relitigation of the *same cause of action*, or any part thereof which could have been litigated, between the same parties and their privies." *Bates v. Devers*, 214 Va. 667, 670-71 (1974).

The circuit court rejected father's arguments, finding that this was "not the future stage of the same litigation. This is a separate and discrete action from that which [the previous trial court judge] ruled on." We agree. Although the parties are essentially the same here, this is not the "same case" or "same litigation" as *Knop I*. In *Knop I*, the primary issue was whether father had, in the past, effectively gifted additional shares of stock to the Knop children in accordance with his stated intentions to do so. This was critical because father had unilaterally converted Ticonderoga Farms from a corporation to an LLC, which under the Virginia Stock Corporation Act, he could only do if he had over two-thirds ownership of the entity. Father only maintained sufficient ownership if the "gifted" shares were not effectively transferred. *Knop I*, 297 Va. at 558; *see also* Code § 13.1-722.11(A)(5). The Supreme Court held "although [father] intended to make gifts of stock to his children for estate planning purposes[,] those gifts were never effectually made because they were never delivered to the children in the manner required by law." *Knop I*, 297 Va. at 556. Thus, being a shareholder owning more than two-thirds of the corporation, he had the power to unilaterally convert Ticonderoga Farms to an LLC without the consent of his minority-shareholder children. *Id.* at 558. While the case touched on (and to some extent, was motivated by) father's desire and ability to unilaterally sell property without the children's consent as minority shareholders, pursuant to his draft operating agreement and the Virginia Limited Liability Company Act, *see* Code § 13.1-1022, the Supreme Court never

---

In the initial assignment of error submitted to this Court, father raised the principles of collateral estoppel and "law of the case." Yet he omitted the original references to "collateral estoppel" and "law of the case" on brief, leaving only that the circuit court "failed to give proper effect to prior court rulings." The brief itself relies entirely upon a res judicata argument, and we therefore limit our discussion to that issue.

addressed the validity of the operating agreement, much less deemed it adopted or effective. Accordingly, the circuit court did not err in finding that res judicata did not apply in this case and that the court was therefore not compelled to accept father's draft operating agreement as effective or binding.

C. *Dissolution and Disassociation*

Father argues that instead of granting the motion for dissolution of Ticonderoga Farms, the circuit court instead should have granted his motion to disassociate the Knop siblings from their stakes in the LLC, leaving him as the sole member. We disagree.

1. Disassociation

Code § 13.1-1040.1 lays out a variety of circumstances under which "a member is dissociated from a limited liability company." As relevant here, it provides that this may occur

> On application by the limited liability company or another member, the member's expulsion by judicial determination because:
>
> > a. The member engaged in wrongful conduct that adversely and materially affected the business of the limited liability company;
> >
> > b. The member willfully or persistently committed a material breach of the articles of organization or an operating agreement; or
> >
> > c. The member engaged in conduct relating to the business of the limited liability company which makes it not reasonably practicable to carry on the business with the member.

Code § 13.1-1040.1(5). Father, as the party seeking this remedy, bore the burden of providing adequate evidence to justify disassociation. *See Denton v. Browntown Valley Assocs.*, 294 Va. 76, 86 (2017) (noting that the burden of persuasion, *i.e.*, "the obligation to introduce evidence that actually persuades the fact finder to the requisite degree of belief that a particular

- 7 -

proposition of fact is true," always remains on the party seeking the remedy (quoting *Suntrust Bank v. PS Bus. Parks, L.P.*, 292 Va. 644, 652 (2016))).

Father's primary argument was that, by refusing to contribute capital when called to do so, the children breached the terms of the operating agreement and therefore disassociation was appropriate under subsection (b). Yet, because the operating agreement that father sought to enforce was not valid, father could not unilaterally demand contributions, nor rely on an alleged breach of that "agreement" as grounds for disassociation. Furthermore, "[n]o promise by a member to contribute to a limited liability company is enforceable unless set out in a writing signed by the member." Code § 13.1-1027(E). No such written promise existed. Therefore, it was not error to deny father's motion to disassociate his children on those grounds.

Given that the operating agreement father sought to enforce was not valid, and considering the sparseness of Ticonderoga Farms's articles of organization, the circuit court focused on subsections (a) and (c) when considering father's motion to disassociate his children from the LLC. It summarized father's claims of the children's "wrongful conduct" as being that they "continue litigation against the LLC, that they failed to accept prior rulings by the Court, they failed to authorize transactions of the company, and they don't provide any capital contributions or suggested plans to alleviate the LLC issues." In assessing each of these claims, the circuit court emphasized the importance of the word "wrongful" in Code § 13.1-1040.1(5)(a), finding that it does not solely mean having some negative effect on the business. The court concluded that nothing father alleged was wrongful conduct, particularly when considering father's own role in precipitating these acts or omissions. We see no error in the circuit court's construction of the statute or application of it to the facts of the case.

The circuit court then considered Code § 13.1-1040.1(5)(c) and considered whether any of the children (since only father requested their disassociation; they did not move for his

disassociation) had engaged in any conduct that made it "not reasonably practicable to carry on the business" with them. Restating some of its earlier factual findings, the circuit court concluded that none of the children had done so, and any impracticability of carrying on the business of Ticonderoga Farms was a circumstance created collectively by the entire family of shareholders, or even primarily by father, and thus disassociation of the children was not an appropriate remedy. We find no error in this conclusion.

The circuit court's denial of the motion to disassociate was based on factual findings, and none of these were "plainly wrong or without evidence to support them." *Dunbar*, 267 Va. at 367. Therefore, in the absence of the children engaging in any "wrongful conduct that adversely and materially affected the business," there being any "material breach of the articles of organization or an operating agreement," or otherwise "mak[ing] it not reasonably practicable to carry on the business with the member," Code § 13.1-1040.1(5), the circuit court did not err in finding father failed to meet his burden. It therefore was not error to deny father's motion to disassociate his children from the business and divest their interests in Ticonderoga Farms.

### 2. Dissolution

Father finally argues that the circuit court erred in granting the motion for dissolution of Ticonderoga Farms. Under Code § 13.1-1047(A),

> On application by or for a member, the circuit court of the locality in which the registered office of the limited liability company is located may decree dissolution of a limited liability company *if it is not reasonably practicable to carry on the business in conformity with the articles of organization and any operating agreement*.

(Emphasis added.) Via this statute, "the General Assembly imposed a strict standard for judicial dissolution of a limited liability company, deferring to the contractual agreement of the parties and allowing judicial dissolution only under the specific circumstances identified in the statute." *Russell*, 283 Va. at 804-05. Again, we consider the facts in the light most favorable to the Knop

- 9 -

siblings, and we uphold the circuit court's judgment unless it is "plainly wrong or without evidence to support" it. *Dunbar*, 267 Va. at 367.

Father asserts that the business could continue to function in accordance with the operating agreement, an argument that fails with there being no operating agreement in effect. He also argues that "even without the operating agreement, [father] can manage LLC based on his ownership of a majority interest in the LLC, and the LLC can continue in business." He reasons that "[u]nder the LLC Act, which controls the management of an LLC in the absence of an operating agreement, LLC management is vested in its members," and thus Ticonderoga Farms can continue because "any action required or permitted to be taken by the members of a limited liability company may be taken upon a majority vote of the members." Code § 13.1-1022. Accordingly, because he controls a majority of the shares, father wishes to continue to operate the business unilaterally because only his vote is needed to ratify any action of the LLC.

Absent any operating agreement, and without any guidance in Ticonderoga Farms's articles of organization, we look to the law governing LLCs to discern what makes it "reasonably practicable," or not, "to carry on the business." Code § 13.1-1047(A). "Every limited liability company formed under this chapter has the purpose of engaging in any lawful business, purpose, or activity, . . . unless a more limited purpose is set forth in the articles of organization." Code § 13.1-1008. Ticonderoga Farms's articles provide no such limitation. So, absent more guidance, we must assume that the "business, purpose, or activity" of Ticonderoga Farms, at the barest minimum, must include the ability to do *something* in furtherance of the business.

In granting the motion for dissolution, the circuit court concluded that it was not reasonably practicable for Ticonderoga Farms to continue to operate, a factual finding to which we defer. It noted the "distrust" and "antagonism between the members." There were

"questions about finances" and the LLC's financial records. It emphasized the impracticality of Ticonderoga Farms continuing to operate with multiple pending lawsuits "filed by both sides," some being "filed in a very short period of time." Further, there was "inability to find resolution through mediation and settlement negotiations." Moreover, "in addition to just the presence of lawsuits and the fact that the parties are at odds in those lawsuits, there's the reality that with those lawsuits comes litigation and resources [that] are being drained." Considering this state of affairs, the circuit court found that certain LLC actions, such as selling properties, had become impracticable "because each side has a different view as to the merits of doing it" and none were willing to acquiesce or change their position.

Before finding the evidence sufficient to warrant dissolution, the circuit court also noted that the plain language of Code § 13.1-1047 "doesn't require establishment that the LLC is impossible to operate." It again emphasized the substantial evidence that Ticonderoga Farms was stuck in "gridlock, a lack of action and progress," because of the animosity, distrust, and overall discord between the members. The circuit court found that this stalemate, and the years of litigation and inability of the parties to co-operate the LLC, warranted the "extraordinary remedy" of granting of the motion to dissolve Ticonderoga Farms. Once again, this conclusion is made upon factual findings to which we defer, because these findings were not "plainly wrong or without evidence to support them." *Dunbar*, 267 Va. at 367.[4] Accordingly, we see no error in

---

[4] The dissent likens the facts of this case to those in *Dunbar*, believing the circuit court erred by "disregarding the operations of the LLC in its decision to order a dissolution, and instead focusing on the members as under the disassociation analysis." Yet the facts of *Dunbar* differ in critical ways from those here. In *Dunbar*, there was a single active member who was directly responsible for impeding the company's operations. *Dunbar*, 267 Va. at 366. The chancellor first removed that bad-actor member before also ordering dissolution. *Id.* The Supreme Court held it was error to *also* order dissolution of the company without considering the practicability of operating it without this bad actor, because "[t]he record fails to show that after this change in the daily management of [the company], it would not be reasonably practicable for [it] to carry on its business pursuant to its operating authority," and, indeed, the chancellor's own

the circuit court's decision to grant the motion to dissolve the LLC in light of the "gridlock" and inaction sown from the discord between father and his children, rendering it "not reasonably practicable to carry on the business" as constituted.

### III. CONCLUSION

Father's arguments attempting to turn his draft operating agreement into an effective and enforceable one fail both under Code § 13.1-1023(B) and his argument of res judicata. Furthermore, the circuit court, making detailed factual findings, did not err in denying the motion to disassociate the Knop siblings or in granting the motion to dissolve Ticonderoga Farms. Finding no error, we affirm the circuit court.

*Affirmed.*

---

order indicated it found the company would be able to operate following the bad actor's expulsion. *Id.* at 368.

Here, there is not a single member that is responsible for the animosity and gridlock plaguing Ticonderoga Farms; it is a circumstance mutually created by all of the members. Furthermore, the circuit court found that the evidence did *not* support disassociation of the Knop siblings, a factual conclusion that the record supports, and to which we owe deference. *Id.* at 366-67. Therefore, unlike in *Dunbar*, the circuit court did not need to consider the practicability of operating Ticonderoga Farms after having disassociated the siblings, because it did not, in fact, disassociate them.

Chaney, J., concurring in part, dissenting in part.

The circuit court committed reversible error in rejecting father's request for the Knop siblings' disassociation and granting his children's request to dissolve Ticonderoga Farms, LLC, a limited liability company organized under Virginia law. In doing so, the circuit court misinterpreted Code §§ 13.1-1040.1(5), -1047(A) and chose the most extreme remedy by dismantling an operating LLC under the demands of minority members who, in the aggregate, owned 27.24% of the company. Therefore, I respectfully dissent from the majority's opinion affirming the circuit court's judgments on disassociation and dissolution.

The circuit court's first error was dismissing father's motion for the disassociation of the Knop siblings under Code § 13.1-1040.1(5). Code § 13.1-1040.1(5)(a)-(b) outlines what conduct permits judicial disassociation of a member. Part (a) covers wrongful conduct and part (b) covers conduct that materially breaches the articles of organization or operating agreement. *Id.* Therefore, to not be redundant, Code § 13.1-1040.1(5)(c) must cover conduct that is neither wrongful nor a material breach of article or agreement terms.

Code § 13.1-1040.1(5)(c) sets forth two criteria to determine covered conduct: (1) "[t]he member engaged in conduct relating to the business of the limited liability company" and (2) "which makes it not reasonably practicable to carry on business with the member." The first clause states that the member's conduct must relate to the business of the company.

As for the second clause, to be "practicable" is to be "reasonably capable of being accomplished" or be "feasible in a particular situation." *Practicable*, *Black's Law Dictionary* (11th ed. 2019). Thus, on the whole, the statute describes circumstances where a member's conduct, affecting the company, makes it not feasible to conduct further business, or further business is not reasonably capable of being conducted with that member.

The Knop siblings' opposition to selling Ticonderoga Farms, LLC's land, refusal to provide capital, and filing frequent lawsuits is conduct that related to the company. The question was not whether this conduct was wrongful or a material breach of any article or agreement terms, but whether it made conducting further business with the siblings no longer feasible. Virginia law does not specify what courts should consider under Code § 13.1-1040.1(5)(c) for determining practicality, reasonable capability, or feasibility. Outside our jurisdiction, however, the New Jersey Supreme Court suggested seven factors to consider when evaluating whether judicial disassociation is appropriate:

> (1) the nature of the LLC member's conduct relating to the LLC's business; (2) whether, with the LLC member remaining a member, the entity may be managed so as to promote the purposes for which it was formed; (3) whether the dispute among the LLC members precludes them from working with one another to pursue the LLC's goals; (4) whether there is a deadlock among the members; (5) whether, despite that deadlock, members can make decisions on the management of the company, pursuant to the operating agreement or in accordance with applicable statutory provisions; (6) whether, due to the LLC's financial position, there is still a business to operate; and (7) whether continuing the LLC, with the LLC member remaining a member, is financially feasible.

*IE Test, LLC v. Carroll*, 140 A.3d 1268, 1279 (N.J. 2016). The analysis of these factors is holistic, "with no requirement that all factors support expulsion, and no single factor determining the outcome." *Id.* These factors are comprehensive and would provide guidance to Virginia courts when considering a disassociation, therefore, I consider them here.

Seen through the criteria set by the New Jersey Supreme Court, the circuit court here made several findings showing that disassociation would have been appropriate. First, the nature of the Knop siblings' conduct towards Ticonderoga Farms, LLC disrupted the business, as they refused to provide capital support to the company and sought its dissolution. R. 1531-32 (assuming without deciding that the siblings engaged in disruptive behavior by "bar[ring] the LLC from raising the capital, selling mature investments . . . and generating revenue"). Second,

- 14 -

father had shown that despite the feuding, the LLC continued its business but had difficulty managing further aspirations through tools such as property sales and capital inflow with constant opposition from the Knop siblings. R. 1535-36 ("Their arguments, in essence, suggest that there is a gridlock, a lack of action and progress by the LLC . . . ."). Third, this dispute had prevented the members from working towards the LLC's goals. R. 1536 ("I know there is testimony from [father] about how he believes the LLC could prosper in the future, but it is difficult to see how we get there with everything as it stands right now."). Fourth, there was a deadlock among the members. *Id.* Fifth, members could not make decisions on the management of the company due to this deadlock. *Id.* Sixth, there were ongoing disputes about the LLC's financial position, but the record supported that the business continued to operate. *E.g.*, R. 1797, 1808-09, 1871-72, 1874-75, 2050, 3178. Finally, there is no evidence that the inclusion of the Knop siblings is destabilizing in and of itself, but father suggests that their opposition to the land sale and frequent lawsuits has been a drain on the LLC's resources. In the end, who was responsible for the dispute is a minimal consideration, if a consideration at all, in analyzing whether a member is willing to work with the LLC pursuant to Code § 13.1-1040.1(5)(c). The crucial factor to consider is that father was the majority member and managing director who sought to continue the business.

Overall, the Knop siblings' conduct towards the company, along with the intense and ongoing feud with management, made it not reasonably practicable to carry on business with them. The two requirements of Code § 13.1-1040.1(5)(c) have been met and, therefore, the circuit court should have ordered the Knop siblings' disassociation.

The circuit court's next error was dissolving Ticonderoga Farms, LLC. The circuit court conflated the statutory analysis for dissolution under Code § 13.1-1047(A) with its prior analysis

of disassociation under Code § 13.1-1040.1(5). Unlike disassociation, which focuses on member conduct, dissolution focuses on the company's ability to carry on its business.

The Supreme Court of Virginia has held that the ability of an LLC to conduct its business must be considered before a judicial order of dissolution. In *Dunbar Group, LLC v. Tignor*, 267 Va. 361, 368 (2004), the chancellor's decision to dissolve an LLC was reversed for failing to make this determination. The Court recognized that the LLC could continue business after the disassociation of an antagonistic member and thus, it was "reasonably practicable for [the LLC] to continue to operate" as understood in Code § 13.1-1047(A). *Id.* at 368. This practicability was further supported by the chancellor's order for the LLC to continue for the duration of a contract with a third party. *Id.* Thus, for dissolution, the Court emphasized the ability to carry on business as an LLC, which is a different analysis than the ability to carry on business with a member. *See id.* at 367-68.

Here, the circuit court made the same error as the chancellor in *Dunbar* by disregarding the operations of the LLC in its decision to order a dissolution, and instead focusing on the members as under the disassociation analysis. *See id.* The circuit court failed to consider the LLC's abilities to honor its existing contracts with employees, banks, or customers, or to enter and honor new contracts. Serious differences of opinion among members and managers, though legitimate and worthy of consideration, were alone insufficient proof of such inability to conduct business. *See Unbridled Holdings, LLC v. Carter*, 607 S.W.3d 188, 190 (Ky. Ct. App. 2020) ("While deadlock is one of many factors a trial court should consider, it is not a prerequisite for judicial dissolution.").

What business the LLC carried out is determined by its articles of organization and any operating agreement. The statute does not require analyzing an operating agreement if one does not exist, as was the case here. Thus, the LLC's business is determined in accordance with its

articles of organization. The majority is correct in recognizing that Ticonderoga Farms's articles contain no limiting language towards the permissible business, purpose, or activity of the LLC and that, at minimum, the LLC must "do something in furtherance of the business." *See supra* at 10 (emphasis omitted). The record shows that it did. This included operating agritourism services and farming activities, employing workers, and entering into contracts with other persons and entities. Therefore, it was not only *reasonably practicable* for Ticonderoga Farms to carry on business under its articles of organization, but it demonstrably did carry on business.

The majority asserts that *Dunbar* is distinguishable because (1) in that case there was a single disruptive member rather than the multiple disruptive members here, and (2) the chancellor in *Dunbar* did order disassociation before dissolving the LLC. *See supra* at 11 n.4. Neither of these facts supplies an adequate basis for distinction. The majority mistakenly relies on *Dunbar* to argue that the analysis of whether an LLC is able to carry on its business is always to depend on (1) the presence of a "bad actor" member in the LLC who is responsible for creating strife, and (2) whether or not this "bad actor" was disassociated before consideration of the dissolution request. On the contrary, the Supreme Court in *Dunbar* considered these particular factors because the LLC in that case contained two members with equal decision-making power, so that any strife between the two would grind operations to a halt and render disassociation necessary to the continuation of the business.[5] This is not the case here, where father was able to make unilateral decisions on behalf of the LLC as its 72.76% interest majority member and managing director. The analysis of whether an LLC can continue to carry on its

---

[5] The company at issue in *Dunbar*, XpertCTI, LLC, was equally owned with The Dunbar Group, LLC holding 50% and Archie F. Tignor holding the other 50% of the company. *Dunbar*, 267 Va. at 363. Thus, upon the dispute on management and Tignor's misconduct, no holding member could manage the company as power was divided equally, leading to a true deadlock. *See id.* at 364-65.

- 17 -

business despite member discord is therefore a fact-dependent inquiry differing from case to case.

The Knop siblings suggested that without the disassociation that occurred in *Dunbar*, the resulting member discord made dissolution necessary. Citing *Russell Realty Associates v. Russell*, 283 Va. 797, 807 (2012), the siblings argued that dissolution is the appropriate remedy in this situation. But *Russell* is distinguishable. It dealt with Code § 50-73.117(5)—which addresses partnerships, not LLCs. Unlike here, that partnership could not conduct the business authorized by its guiding agreement. *Russell*, 287 Va. at 805-06. The present case is different because Ticonderoga Farms was an LLC that could conduct its business, notwithstanding the conflict between its members.

Finally, upholding this dissolution creates policy and equitable concerns for the courts and all Virginia companies. Here, minority members of Ticonderoga Farms, holding only 27.24% ownership of the LLC combined, persuaded a circuit court to disband a legally constructed and operating entity against the wishes of the majority 72.76% owning member. The effects of dissolution are serious. When an LLC is dissolved, the company is disbanded, and its assets are sold off or liquidated. This process leaves nothing behind to continue the business operations that were previously offered. *See* Code §§ 13.1-1048 to -1050. It is critical to the analysis to determine whether an LLC can continue its business operations to fully understand the implication of dissolution. If the LLC is not conducting any business, the impact of the dissolution on its members or other stakeholders is limited.

Furthermore, the dissolution of an operating company like Ticonderoga Farms affects not only its members but also its employees and those seeking its services. Thus, this decision has implications for any Virginia business, whether a multi-million-dollar company operating across the Commonwealth and beyond or any number of the small mom-and-pop businesses organized

under the Virginia Limited Liability Act that provide services to their local communities. For these reasons, the Supreme Court of Virginia and other jurisdictions apply a strict standard in considering a dissolution action to honor legislative intent deferring to legally constructed LLCs' formation. *See, e.g.*, *Dunbar*, 267 Va. at 367; *In re 1545 Ocean Ave., LLC*, 72 A.D.3d 121, 128-31 (N.Y. App. Div. 2010); *In re Arrow Inv. Advisors, LLC*, 2009 Del. Ch. LEXIS 66, *3 (Apr. 23, 2009) ("Dissolution is an extreme remedy to be applied only when it is not [sic] longer reasonably practicable for the company to operate in accordance with its founding documents.").

Statute and precedent required the circuit court to consider whether the LLC could carry out its business before ordering dissolution. The circuit court did not do so. Disputed property sales, debt, and other negative interactions can be expected in a business and alone do not speak to the ability of that LLC to carry on. Instead, income, profitability, payments to employees, and the operational status of the LLC's primary services should have been analyzed here.

Disassociation, rather than dissolution, is the appropriate remedy to address management deadlock caused by LLC members. In this case, member disputes between majority and minority members in the LLC led to administrative, business, and judicial strife, but did not prevent the LLC from carrying out day-to-day operations as a farm and agritourism business. Here, the circuit court misapplied the law to the facts in considering whether to disassociate based on member conduct and mistakenly reasoned that dissolution was the proper remedy under the standards of disassociation. I would hold that the circuit court erred by ordering dissolution rather than disassociation and therefore respectfully dissent.